UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

STEUBEN FOODS, INC.,                                    **DECISION AND ORDER**
                            Plaintiff,

v.                                                      1:10-cv-00780-EAW-JJM
                                                        1:10-cv-00781-EAW-JJM
OYSTAR GROUP, ET AL.,                                   1:12-cv-00904-EAW-JJM
                                                        1:13-cv-00892-EAW-JJM
                            Defendants.                 1:13-cv-01118-EAW-JJM

—————————————————————

These five related patent infringement actions have been assigned to me for

supervision of pretrial proceedings [100].[1]  Before me are defendants' motions to amend their

final invalidity contentions [202].  Oral argument was held on November 21, 2016 [222] and

January 19, 2017 [232].  For the following reasons, the motions are denied, without prejudice.[2]


**BACKGROUND**

Defendants' motions are "based on newly-discovered evidence regarding a prior

art machine sold in the 1980's - the Metal Box SL-4/ML-4 filler.  Specifically, Defendants move

for leave to amend their contentions of invalidity of at least some of the asserted claims of one or

more of the patents-in-suit as being anticipated under 35 U.S.C. §102, invalid under 35 U.S.C.

§102 as being derived from another, and/or obvious under 35 U.S.C. §103 in light of the SL-

—————————————

[1]      Unless otherwise indicated, bracketed references are to CM/ECF docket entries in 10-cv-780.
However, identical papers relative to the pending motions have been filed in each of the five cases.

[2]      These motions are nondispositive. Shire, LLC v. Amneal Pharmaceuticals, LLC, 2014 WL
9913150, *1 (D.N.J. 2014), aff'd, 802 F.3d 1301 (Fed. Cir. 2015) ("[t]his matter comes before the Court
on Defendants' appeal of the non-dispositive order by Magistrate Judge Waldor . . . denying Defendants'
motion to amend their invalidity contentions").

4/ML-4 filler, either alone or in combination with other prior art." Defendants' Memorandum of Law [202-1], pp. 2-3.


## ANALYSIS

Local Patent Rule 3.10(a) allows a party to amend its final invalidity contentions "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment". "[M]otions to amend invalidity contentions are not granted as liberally as motions to amend pleadings outside of the patent litigation context, partly because the philosophy behind amending claim charts is decidedly conservative and designed to prevent the 'shifting sands' approach to a party's contentions." Nautilus Neurosciences, Inc. v. Wockhardt USA LLC, 2013 WL 7901901, *2 (D.N.J. 2013); Convolve, Inc. v. Compaq Computer Corp., 643 F. Supp. 2d 336, 340-41 (S.D.N.Y. 2008). Therefore, the moving party must "overcome a substantial preference against granting the amendment". Nautilus Neurosciences, 2013 WL 7901901, *2.

"The Court has broad discretion to determine what constitutes good cause to amend invalidity contentions." MacroSolve, Inc. v. Antenna Software, Inc., 2013 WL 3833079, *2 (E.D. Tex. 2013). "[M]any district courts have identified a non-exclusive, five-factor test to determine if a defendant has shown the requisite 'good cause' to justify leave to amend. Specifically, in addition to (1) diligence and (2) lack of prejudice, these courts also consider (3) the reason for the delay, (4) the importance of the proposed amendments, and (5) the availability of a continuance to cure any prejudice to the patentee". Defendants' Memorandum of Law [202-1], p. 6 (*citing* Convolve, 643 F. Supp. 2d at 341).

Although the parties devote considerable attention to defendants' diligence (or lack thereof) in moving to amend, I will instead focus initially on the fourth factor, namely the alleged importance of the proposed amendments with respect to the three bases for invalidity identified by defendants (anticipation, derivation, and obviousness) - for unless defendants demonstrate the importance of the allegedly recently discovered information to these invalidity defenses, there is no reason to require Steuben (or this court) to address them further.

## A. Anticipation

"A patent is invalid for anticipation if a single prior art reference discloses *each and every* limitation of the claimed invention." Schering Corp. v. Geneva Pharmaceuticals, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (emphasis added). Citing claim 19 of U.S. Patent No. 6,945,013 (the "'013 Patent") as "representative" of the asserted claims, defendants argue that "Mr. Taggart's deposition revealed that the Metal Box SL-4/ML-4 machine performed each of [its] limitations". Defendants' Memorandum of Law [202-1], p. 14. For present purposes, I need only focus on claim 19's limitation calling for a "plurality of bottles" ([1], p. 32 of 90, col. 2, line 44), for if the Metal Box SL-4/ML-4 machine does not contain that limitation, then by definition it does not anticipate claim 19.

At his deposition Mr. Taggart testified that Metal Box SL-4/ML-4 machine filled "cups as small as 4 ounces and cups as large as 12 ounces", and that the "approximate dimension of a 12-ounce cup was about 3 and a half inches in diameter and about 5 inches tall. That's a guess". [202-3], p. 9 of 9. When asked "[i]n the context of your patents, what's the difference between a cup and a bottle?", Mr. Taggart responded "[t]ypically a bottle has a much smaller diameter-to-height ratio than a cup . . . That's all I can think of right now". Id.

Defendants rely upon this deposition testimony, which they argue is "confirmed by the patents-in-suit. For example, the '013 patent defines a 'bottle' as a container having 'a small opening compared to its height and its greatest width (e.g., the ratio of the opening diameter to the height of the container is less than 1.0)'" Defendants' Reply [215], p. 15 of 20 (*quoting* '013 Patent [1], p. 25 of 90, col. 2, lines 48-51). "This . . . is the express meaning afforded the term by the inventor and the patents-in-suit." Id. "[W]e just discovered at Taggart's deposition that the cups being filled by the ML-4 as only Taggart knew, they were taller than they were wide, they were bottles, and they invalidate the patent." Transcript of November 21, 2016 oral argument [222], p. 43.

Defendants argue that "it would be premature to deny defendants' motions based on a 'bottle' construction that has not yet been fully briefed, much less decided by this Court or confirmed by Judge Wolford." Defendants' January 19, 2017 Letter Brief [233], p. 4. While I recognize that a definitive interpretation of the word "bottles" as used in the '013 Patent must await the claim construction process (which began only recently),[3] defendants cannot have it both ways: having argued at length in support of their motion that the '013 Patent's reference to "bottles" should be interpreted to encompass the cups utilized in the Metal Box machine, defendants cannot preclude me at this time from considering the strength of that argument in assessing the importance of the proposed amendments.

For the following reasons, I do not find defendants' argument persuasive. "[T]he words of a claim are generally given their ordinary and customary meaning . . . . the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of

---

[3]    Steuben filed its initial claims construction submission on February 3, 2017 [238]. However, in fairness to defendants, I have not looked at it in preparing this decision.

ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date

of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in

the art may be readily apparent even to lay judges, and claim construction in such cases

involves little more than the application of the widely accepted meaning of commonly

understood words . . . . In such circumstances, general purpose dictionaries may be helpful."

Id. at 1314.

General purpose dictionaries distinguish between the words "bottle" and "cup".

For example, the Merriam-Webster Unabridged Dictionary (http://unabridged.merriam-

webster.com, viewed online on February 6, 2017) defines "bottle" as "a rigid or semirigid

container made typically of glass or plastic, having a round and comparatively narrow neck or

mouth", and "cup" as "a usually open bowl-shaped drinking vessel often having a handle and a

stem and base and sometimes a lid". The Oxford English Dictionary (www.oed.com, viewed

online on February 6, 2017) defines "bottle" as "[a] container with a narrow neck and wider

body", and "cup" as "[a] small open vessel for liquids, usually of hemispherical or hemi-

spheroidal shape, with or without a handle; a drinking-vessel".

Nor are the two words treated as interchangeable in common parlance. *See*, *e.g*.,

Mather v. Griffin Hospital, 207 Conn. 125, 143, 540 A.2d 666, 675 (Sup. Ct. Conn. 1988) ("he

cannot drink from a cup, but drinks from a bottle"); Iseman v. Commissioner of Social Security,

2016 WL 5173321, *2 (N.D. Ohio 2016) ("[p]laintiff drinks out of a bottle . . . instead of a cup").

Defendants do not suggest that dictionary definitions or common parlance would

lead one to conclude that the words "bottle" and "cup" are synonymous. Instead, they argue that

"under the black letter lexicography doctrine, when a patentee chooses to define a term in a

patent, that definition controls district court claim construction and supersedes any common parlance layman's or dictionary definition". Defendants' January 19, 2017 Letter Brief [233], p. 1 (citing Phillips, 415 F.3d at 1316). However, in order to overcome "the presumption in favor of a dictionary definition . . . the patentee, acting as his or her own lexicographer, [must] *clearly* set forth an *explicit* definition of the term different from its ordinary meaning". Phillips, 415 F.3d at 1319 (emphasis added).

As previously noted, dictionary definitions for the word "bottle" describe it as having a neck. Nevertheless, defendants argue that "if you look at Mr. Taggart's testimony, he said nothing about a neck of a bottle or a container as being the difference between a cup and a bottle. All he said was that there's a difference in the height to the diameter. So in other words, a bottle is a container that has a . . . greater height than the diameter of the container." November 21, 2016 oral argument [222], pp. 34-35. "So in this really precisely defined world of patent claim construction, we just discovered at Taggart's deposition that the cups being filled by the ML-4 as only Taggart knew, they were taller than they were wide, they were bottles, and they invalidate the patent." Id. at 43.

However, "[t]he litigation-induced pronouncements of [the] inventor . . . . have no effect on what the words of [the patent] in fact do convey and have conveyed during its term to the public". Lear Siegler, Inc. v. Aeroquip Corp., 733 F.2d 881, 889 (Fed. Cir. 1984). Although the inventor "is permitted to define the terms of his claims . . . . the place to do so is in the specification of the inventor's application, and the time to do so is prior to . . . its issuance as a United States patent". Id. The specification of the '013 Patent is not at all inconsistent with the dictionary definition of a bottle, because it states that a bottle "generally has a small opening compared to its height *and its greatest width*". [1], p. 25 of 90, col. 2, lines 48-49 (emphasis

added).  Moreover, each of the drawings in the specification (which are relevant to claim

interpretation - *see* Power Integrations, Inc. v. Fairchild Semiconductor International, Inc., 711

F.3d 1348, 1360 (Fed. Cir. 2013)) depict the bottle as having a neck.[4]

Moreover, the use of the specially defined term must be "consistent within [the]

patent disclosure".  Lear Siegler, 733 F.2d at 889.  Far from consistently treating the word

"bottle" as synonymous with "cup", the specification of the '013 Patent *distinguishes* between

the two, stating that "[t]he interior surface of a container such as a bottle or jar is much more

difficult to aseptically sterilize than the interior surface of a cup" ([1], p. 25 of 90, col. 2, lines

45-47).  That is a strong indication that for purposes of the '013 Patent, a "bottle" does not mean

a "cup".  Phillips, 415 F.3d at1316 ("the specification may reveal an intentional disclaimer, or

disavowal, of claim scope by the inventor.  In that instance . . . the inventor's intention, as

expressed in the specification, is regarded as dispositive").

Finally, defendants rely upon a statement by the patent examiner during re-

examination proceedings in the Patent and Trademark Office ("PTO") that, although "the

specification is not clear on a definition of a bottle", "a structure essentially being a tall cylinder

without a traditional neck is covered by the claims".  [233-1], pp. 49-50 of 120.  However, the

PTO and this court "take different approaches in determining invalidity and on the same

evidence could quite correctly come to different conclusions".  Ethicon, Inc. v. Quigg, 849 F.2d

1422, 1428 (Fed. Cir. 1988).

---

[4]    Defendants also point out that Steuben's expert, Philip Nelson, told the PTO in connection with
the reexamination of a related patent (6,481,468) that "a bottle has more of a pre-formed shape with a
small opening compared to its height. A ratio of the diameter D of the bottle to the height of the bottle is
generally less than 1.0. (See col. 13, line 45-50 of '468)". Nelson Declaration [233-2], ¶36. However, the
portion of the '468 Patent cited by Mr. Nelson begins with the phrase "As shown in FIG. 8" ([1-1], p. 40
of 111, col. 13, line 45), and FIG. 8 ([1-1], p. 8 of 111) shows bottles having a neck, with an opening
smaller than their widest diameters.

"Before the district court, a patent is presumed valid and the party asserting invalidity must prove the facts to establish invalidity of each claim by clear and convincing evidence," while "in a reexamination proceeding before the PTO, there is no presumption of validity and there must only be a preponderance of the evidence to show nonpatentability before the PTO may reject the patent claim(s)". Steuben Foods, Inc. v. GEA Process Engineering, Inc., 2013 WL 5567499, *3 (W.D.N.Y. 2013).

For all of these reasons, I conclude that defendants have failed to make even a colorable argument that Mr. Taggart's deposition testimony could lead to the conclusion that the '013 Patent is anticipated by the Metal Box SL-4/ML-4 machine. Since they have failed to show the importance of that testimony, I need not decide the question of their diligence at this time. However, recognizing the possibility that the claims construction process may cause me to take a different view of the meaning of "bottle" as used in the '013 Patent, I will leave the door slightly ajar to the possibility of a renewed motion by defendants following claims construction.

## B. Derivation

For the same reason, at this time I fail to see a colorable basis for defendants' proposed "derivation" defense, which requires them to "prove both that the invention was previously conceived by another person, and that the *complete* conception was communicated to the party charged with derivation". Johnson & Johnson v. W. L. Gore & Associates, Inc., 436 F. Supp. 704, 711 (D. Del. 1977) (emphasis added); Pentech International, Inc. v. Hayduchok, 1990 WL 180579, *8 (S.D.N.Y. 1990) (same).

## C. Obviousness

A determination of obviousness is not a simple matter. "Obviousness under 35 U.S.C. §103 is a legal conclusion involving four factual inquiries . . . . These inquiries consist of: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness . . . . Secondary considerations include evidence of factors tending to show nonobviousness, such as commercial success of the invention, satisfying a long-felt need, failure of others to find a solution to the problem at hand, and copying of the invention by others." B.F. Goodrich Co. v. Aircraft Braking Systems Corp., 72 F.3d 1577, 1582 (Fed. Cir. 1996). "When obviousness is based on a particular prior art reference, there must be a showing of a suggestion or motivation to modify the teachings of that reference." Id.

At the time they filed these motions, defendants had not even submitted their proposed amendments to their final invalidity contentions. *See* Steuben's Opposition [210], Point I. They did submit them thereafter. However, the question before me is not whether the proposed amendments would have been sufficient had they been submitted prior to the deadline for doing so, but whether there is good cause for allowing them now - and, as previously noted, one of the factors in determining good cause is the importance of the amendments.

Whereas defendants at least advanced extensive arguments as to the interpretation of "bottle" as bearing upon anticipation, their motion says little with respect to obviousness. Neither their original [202-1] nor their reply brief [215] addressed the question at all, and while they briefly touched on the subject during oral argument, that argument was not extensive. As best I can discern, while defendants' proposed amendments with respect to obviousness mention various items of prior art, they do not attach copies of all of those prior art items, they

-9-

do not submit a declaration of someone skilled in the prior art to discuss why the patents at issue would be obvious in light of that prior art, and they do not discuss the factors listed in B.F. Goodrich with respect to each proposed amendment.

While it may have been burdensome for defendants to do so, they cannot shift that burden to the court. "It is not the Court's responsibility to cull through the record in search of evidence . . . . It should be the party's responsibility to direct the court's attention separately to each portion of the record which supports each of the party's distinct arguments." Freeman v. City of Riverdale, 2007 WL 1129004, *6 (N.D. Ga. 2007). *See also* George v. Colvin, 2015 WL 4394544, *3 (N.D. Ohio 2015) ("the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims"); Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("AOC has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind").

Therefore, I conclude that defendants have failed to establish good cause for amending their final invalidity contentions with respect to obviousness.

## CONCLUSION

For these reasons, defendants' motions to amend their invalidity contentions[5] are denied, without prejudice to possible renewal following claims construction.

Dated: February 10, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[5]    [202] in 10-cv-780; [263] in 10-cv-781; [371] in 12-cv-904; [224] in 13-cv-892; and [150] in 13-cv-1118.