

Karen E. Keller
I.M. Pei Building
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0702
kkeller@shawkeller.com

January 27, 2020

**BY CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

      Re:    *Steuben Foods, Inc. v. Shibuya Hoppmann Corporation et al.*,
              C.A. No. 19-2181-CFC-CJB

Dear Judge Burke:

This firm, with Sterne, Kessler, Goldstein & Fox, P.L.L.C., represents Defendants Shibuya Kogyo Co., Ltd., Shibuya Hoppmann Corp. (collectively, "Shibuya"), and HP Hood, L.L.C., in the referenced action. Pursuant to the Court's oral order of January 13, 2020, we write to explain (i) why the Court should stay this case as to the asserted claims of the '013 and '435 patents that stand rejected in reexamination, and (ii) why an early motion for summary judgment of non-infringement of the '591 patents is appropriate.[1]

**I.    The Court should stay the case as to the asserted claims of the '435 and '013 Patents.**

In parallel with this case, the Patent Office has opened several proceedings to decide the patentability of the '435 and '013 patents' claims. As a consequence of those proceedings, all but one asserted claim from the '435 has been held unpatentable in an IPR decision that the Federal Circuit has affirmed. *See Steuben Foods, Inc. v. Nestle USA, Inc.*, 884 F.3d 1352, 1357 (Fed. Cir. 2018). The sole remaining asserted claim (claim 37) now stands rejected in an *ex parte* reexamination. The asserted claims of the '013 patent are in a similar state. In an IPR, the Patent Office held that some of asserted claims of the '013 patent are unpatentable, which decision is now on appeal to the Federal Circuit. But the four asserted claims of the '013 patent that survived IPR are now undergoing *inter partes* reexamination and stand rejected. The '435 and '013 patents expired, respectively, on June 11, 2019, and May 6, 2019.

There is a high likelihood that all asserted claims in these patents will be invalidated by these reexaminations. According to the most current Patent Office statistics, only 20-21% of *ex parte* reexaminations end with all claims surviving. For *inter partes* reexamination, that rate falls to just 6%. Given that the Patent Office has already substantively examined the relevant claims and has issued office actions rejecting them, it stands to reason that the claims here stand an even lesser chance of surviving than the Patent Office's statistics would normally suggest. It is therefore likely that these claims will never need to be litigated.

Given this, a stay as to these patents claims is appropriate because (i) a stay would simplify the

---

[1] This letter refers to the relevant patents using their last three digits. The six patents-in-suit are U.S. Patent Nos. 6,536,188; 6,209,591; 6,475,435; 6,481,468; 6,945,013; and 6,702,985.

The Honorable Christopher J. Burke
Page 2

issues in this case; (ii) this case is at an early stage, so a stay will conserve substantial resources; and (iii) Plaintiff Steuben will not be prejudiced by a stay.[2] *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *UCB, Inc. v. Hetero USA Inc.*, 277 F. Supp. 3d 687, 690 (D. Del. 2017).

### a. A stay will simplify the issues.

A stay of the case as to the '435 and '013 patents would significantly simplify issues for litigation. This simplification will occur, most obviously, because a stay will effectively eliminate active litigation of two entire patents, removing issues of infringement, invalidity, and damages, and likely others. On claim construction alone, a stay as to the five relevant claims would remove as many as seven claim terms that the parties and the Court will no longer need to grapple with. Moreover, even if Steuben completely prevails in the reexaminations, the issues in this case are likely to be simplified because the Court then will have the benefit of the PTO's expertise in examining (and the patent owner's statements about) the claims and the prior art.

Relatedly, not staying the case runs the risk of making the issues *more* complicated, because parallel litigation here, at the Patent Office, and before the Federal Circuit raises the chance of inconsistent rulings. *UCB*, 277 F. Supp. 3d at 690; *see also Textron Innovations Inc. v. Taro Co.*, Civil Action No. 05-486-GMS, 2007 WL 7772169, at *3 (D. Del. Apr. 25, 2007) ("Moreover, not staying the proceedings runs the risk of inconsistent adjudications or the issuance of advisory opinions.").

### b. The early stage of the case favors a stay.

Despite the near-decade-long pendency of this case, minimal progress was made before its transfer here. The parties had done little more than exchange infringement and invalidity contentions, submit claim-construction briefing, conduct limited written discovery, and depose a single fact witness. As a result, significant work lies ahead for the parties and the Court. For example, the parties will need to submit a new round of claim-construction briefs, which the Court then will need to rule upon. The parties still need to complete fact discovery. After that, expert-witness discovery and dispositive-motion practice will need to be completed. The Court has not issued a scheduling order, so there is no trial date. In sum, staying the case as to the relevant claims presents the opportunity for a significant savings of the Court's and the parties' resources.

### c. A stay will not unduly prejudice Steuben.

Finally, a stay will not unduly prejudice Steuben. The '013 and '435 patents have expired, so injunctive relief is not available. In the unlikely event that any of the claims survives reexamination, money damages for past infringement will be Steuben's only remedy, and Steuben can be compensated for any delay through appropriate application of prejudgment

---

[2] The parties agree that this case should be stayed as to the '468 patent and as to claims 18 and 19 of the '013 patent. The parties disagree, however about whether a stay is appropriate with respect to the four other asserted claims in the '013 patent and the one asserted claim in the '435 patent, all of which stand rejected in the Patent Office.

The Honorable Christopher J. Burke
Page 3

interest. *See e.g., Huvepharma EOOD v. Associated British Foods, PLC*, Civil Action No. 18-129, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) (stating the only advantage non-movant can gain from litigation of expired patents is damages). And there is no reason to think that a stay would provide any tactical advantage to either side in addressing the merits of this case.

## II. The Court should permit defendants to file an early summary-judgment motion.

The Court should allow the defendants to file an early summary-judgment motion that they do not infringe any asserted claim of the '591 patent. The '591 patent purports to solve a particular problem that could arise in aseptic-bottling systems by using a specific type of valve—one that, when opening and closing, has a valve stem or piston that moves between (i) the sterile region where food is bottled, and (ii) a non-sterile region. Exposing the valve stem to the non-sterile region and then reinserting it into the sterile region risks contaminating the sterile region and the food product itself. Figures 23 and 24 of the '591 patent (with color added for ease of exposition) illustrate the problem:



When the valve is closed, as shown on the left, the red portion of the valve stem is in the non-sterile pink region. When the valve is opened, as shown on the right, the red portion of the valve stem moves from the non-sterile pink region into the sterile green region, where it risks contaminating the purple foodstuffs as they are bottled.

The '591 patent's solution to this problem is shown in Figs. 25 and 26 (again, with color added):



The red portion the valve stem no longer moves into the pink non-sterile region; instead, it moves into a new, orange, continuously sterilized second sterile region. There is still a portion of the valve stem that moves back and forth between the pink non-sterile region and the orange second sterile region, which could potentially introduce contaminants into the orange region. To address this potential contamination, the orange second sterile region is "continuously sterilized" so that any contaminants carried into it are eliminated before they can be carried by the red valve stem portion into the green first sterile region. *See* '591 patent at 14:44-63.

Shibuya's machines operate in a fundamentally different way: They use a bellows valve, which

The Honorable Christopher J. Burke
Page 4

includes a solid, flexible, concertinaed (*i.e.*, accordion-like) barrier that separates the sterile region where the food is located from the non-sterile region where the moving parts of the valve are located. Because of that flexible barrier, the contamination problem allegedly addressed by the '591 patent never arises in a bellows valve, and thus Shibuya's machines neither need nor use the patented solution.

Before this case was transferred from the Western District of New York, that court granted a similar motion for summary judgment of noninfringement in a related case. *See* Decision and Order, *Steuben Foods, Inc. v. GEA Process Engineering Inc.*, No. 12-cv-00904, Dkt. No. 432 (W.D.N.Y. Mar. 17, 2017) ("D&O") (adopting *Report and Recommendation*, Dkt. No. 356 (W.D.N.Y. Aug 26, 2016)); *see also Report and Recommendation*, Dkt. No. 292 (W.D.N.Y. Apr. 4, 2016). While the precise structure of the valve in that case is different from the valve in the Shibuya machines, the valves are similar in the key respect that both use a flexible barrier to separate the valve mechanism from sterile region where the food is filled into bottles, thus avoiding the problem that the '591 patent is designed to solve and eliminating the need for a continuously sterilized second sterile region. As a result of the flexible barrier, the court ruled, no reasonable jury could find that the accused systems extended a portion of the valve from the continuously sterilized second sterile region into the first sterile region and retracted the portion of the valve from the first sterile region back into the continuously sterilized second sterile region, as would be required for infringement.

Steuben attempted to avoid summary judgment by arguing that a sterile region should not be defined by physical barriers or boundaries but could instead be considered as an arbitrary region in three-dimensional space. The court rejected that argument, saying: "Plaintiff has offered no explanation for how a 'sterile region' consisting of a fixed area undefined by any physical boundary could be separated from a non-sterile area and filled by sterilizing media." D&O at 10. The court also rejected Steuben's argument that the valve piston should be understood to move "into" a sterile region even when a flexible physical barrier prevents any possibility of contamination of the sterile region by the piston: "the '591 Patent's specification makes it clear that when a portion of the valve moves from one region into another, it interacts with the contents of each region, such that contaminants may be passed back and forth. In this context, the word 'into' cannot fairly be construed to include situations where the relevant portion of the valve is separated from the second region by a physical barrier." *Id.* at 7.

Because there is no dispute of material fact as to the structure and operation of Shibuya's valve, which Steuben has inspected, Steuben's infringement contentions fail to articulate a viable theory of infringement. This Court should entertain an early summary-judgment motion that will eliminate the '591 patent from this case just as it was eliminated from the GEA case in New York. Shibuya and Hood should not have to expend resources on expert reports and discovery when Steuben's infringement theories for this patent are insufficient on their face.

Respectfully submitted,

/s/ *Karen E. Keller*

Karen E. Keller (No. 4489)

The Honorable Christopher J. Burke
Page 5

cc: Clerk of the Court (by hand delivery)
All counsel of record (by e-mail)