IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEUBEN FOODS, INC., | ) | |
| | ) | **Redacted- Public Version** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-2181-CFC-CJB |
| | ) | |
| SHIBUYA HOPPMANN CORP., | ) | ████████████████████ |
| SHIBUYA KOGYO CO., LTD., and | ) | ████████████████ |
| HP HOOD LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (NO. 1) OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,536,188

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600

June 4, 2021

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants Shibuya
Hoppmann Corporation, Shibuya
Kogyo Co., Ltd., and HP Hood LLC*

# **TABLE OF CONTENTS**

I.     Nature and Stage of the Proceedings................................................1

II.    Summary of the Argument ...............................................................1

III.   Statement of Facts............................................................................6

      A.     The '188 patent.......................................................................6

      B.     The Hood Lines .......................................................................8

IV.    Argument ........................................................................................11

      A.     Legal standard .......................................................................11

      B.     The Hood Lines do not infringe the "means for providing
             a plurality of bottles" limitation of the asserted claims
             because they lack a "pushing element" or equivalent........................13

      C.     The Hood Lines do not infringe the "means for filling the
             aseptically disinfected plurality of bottles at a rate greater
             than 100 bottles per minute" limitation..............................................17

           1.     No reasonable jury could find that the Hood Lines
                 contain a "conveyor plate" or equivalent...................................19

           2.     No reasonable jury could conclude that the Hood
                 Lines contain a "conveyor" or equivalent................................22

V.     Conclusion .....................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arthur A. Collins, Inc. v. Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ..........................................................................17

*Aspex Eyeware, Inc. v. Altair Eyewear, Inc.*,
   288 F. App'x 697 (Fed. Cir. 2008) ....................................................................21

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998) .......................................................12, 13, 16, 24

*Cortland Line Co. v. Orvis Co.*,
   203 F.3d 1351 (Fed. Cir. 2000) ..........................................................................15

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
   389 F.3d 1370 (Fed. Cir. 2004) .............................................................12, 20, 21

*Freedman Seating Co. v. Am. Seating Co.*,
   420 F.3d 1350 (Fed. Cir. 2005) ..........................................................................15

*General Protecht Grp., Inc. v. Int'l Trade Comm'n*,
   619 F.3d 1303 (Fed. Cir. 2010) ..........................................................................16

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
   496 F. App'x 57 (Fed. Cir. 2012) .......................................................................23

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) .........................................................11, 17, 22, 23

*Ishida Co. v. Taylor*,
   221 F.3d 1310 (Fed. Cir. 2000) ..........................................................................11

*J&M Corp. v. Harley-Davidson, Inc.*,
   269 F.3d 1360 (Fed. Cir. 2001) .................................................................12, 21

*Mas-Hamilton Grp. v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) .............................................................15, 17, 23

*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999) .............................................................11, 12, 17

*Toro Co. v. Deere & Co.*,
  355 F.3d 1313 (Fed. Cir. 2004) .......................................................16, 21, 23, 24

*United Access Techs., LLC v. AT&T Corp.*,
  2021 WL 1840785 (D. Del. 2021) .......................................................................11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ...............................................................................................12

*Welker Bearing Co. v. PhD, Inc.*,
  550 F.3d 1090 (Fed. Cir. 2008) .................................................................14, 23

**Statutes**

Section 112(6) ...........................................................................................11, 12, 18

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................11

## I.   Nature and Stage of the Proceedings

Steuben filed this patent-infringement case in 2010, asserting patents against aseptic filling machines (the "Hood Lines") that Shibuya manufactured and sold to HP Hood. The case was transferred to this Court in November 2019. Dkt. 482. Discovery has concluded. Trial is set for November 2021.

## II.   Summary of the Argument

**A.**   No reasonable jury could conclude that the Hood Lines infringe the "means for providing a plurality of bottles" limitation of the asserted claims. This means-plus-function limitation requires a "pushing element" (item 84 in the specification) or equivalent.

The Hood Lines do not use a pushing element to provide bottles into the sterilization apparatus. Instead, ███████████████████████████████████



Patented "pushing element"

███████████████ is not equivalent to the claimed pushing element because the structures operate in substantially different ways. *First*, ███████████████

████████████████████████████████████████████ whereas the pushing

element uses *linear* motion to push the bottles away from it into the sterilization

apparatus. *Second*, ████████████████████████ whereas the pushing

element intermittently retracts and extends. *Third*, █████████████████

████████████████████████████████████ whereas the

pushing element pushes groups of up to six bottles at once.

   **B.**    No reasonable jury could conclude that the Hood Lines infringe the

"means for filling the aseptically disinfected plurality of bottles at a rate greater

than 100 bottles per minute" limitation of the asserted claims. This is a means-

plus-function limitation corresponding to the two-by-six "conveyor plate 94" that

holds a group of up to 12 bottles as they move through the apparatus and a

"conveyor 106" that transports the conveyor plates.

   The Hood Lines do not contain these structures or their equivalents. Instead,

████████████████████████████████████████████

████████████████████████████





FIG. 3

Patented conveyor



1.    ███████████████████████████████████

███████████████████████████████████

██████████████████████ whereas the conveying plate indexes groups

of bottles in a two-by-six matrix. *Second,* ████████████████

███████████████████ whereas the conveying plate supports the bottles

from below. *Third,* ████████████████████████████████

whereas the conveyor plate has fixed hole sizes. *Fourth,* █████████████

██████████████████████████████ whereas bottles in the

conveyor plate remain in the same plate as the entire plate moves from station to

station.

2.    ██████████████████████ are not equivalent to the claimed

conveyor because they operate in substantially different ways. *First,* ███████

███████████████████████████ whereas the conveyor 106

moves groups of bottles in a linear motion. *Second,* █████████████████

██████████ whereas the conveyor 106 moves intermittently, stopping at each

station. *Third,* ████████████████████████████████████

██████████████████ whereas the bottles on the conveyor stay in

the same conveying plate as they move from station to station.

## III.   Statement of Facts

### A.   The '188 patent

The patent describes an "aseptic processing apparatus" that unscrambles

bottles and provides them to "a filler apparatus 50 after passing through a bottle

infeed and sterilization apparatus 60." Ex. A, 4:58-64. Once the bottles are

properly oriented, they are manipulated into two "horizontal row[s]" (one on each

side) and pushed into a "vertical lane" by "pushing element 84." *Id.*, 5:4-41. Once

in the vertical lane, the two rows of bottles (forming a grouping of up to 12 bottles)

"are directed downward into the bottle infeed and sterilization apparatus 60." *Id.*

After the pushing element 84 pushes the row of bottles into the vertical lane, it

retracts so that another row can enter. Figure 5 illustrates this process:



Once the bottles are arranged into the two-by-six matrix, they proceed

through a conveying apparatus 110 to be disinfected in batches.



FIG. 3

Each group of bottles travels down the conveyor via a conveying plate 94,

depicted below. *Id.*, 7:41-60.



FIG. 8

7

Conveying plate 94 holds a batch of 12 bottles in a two-by-six matrix and "displace[s]" the group of bottles through the system. *Id.*, 7:41-43.

Each asserted claim requires a "means for providing a plurality of bottles" (the pushing element) and a "means for filling the aseptically disinfected bottles at a rate greater than 100 bottles per minute" (which includes the conveyor and conveyor plate). SUMF ¶1; Dkt. 531, 2, 6 (Claim Construction Order).

## B.    The Hood Lines

Steuben has accused HP Hood's P4, P6, and P7 Lines of infringing the '188 patent. ██████████████████████████████████████████████

The Hood Lines differ in substantial ways from the bottling apparatus claimed in the '188 patent. Two differences are relevant here.

*First*, ██████████████████████████████████████████
████████████████████  █████████████████████████████
████████████████████████████████████████
████████████████



*Second*, the Hood Lines do not use a linear conveyor or conveying plate.

SUMF ¶5. Instead, █████████████████████████████████████████

████████████████████████

9



## IV.   Argument

### A.   Legal standard

**Summary judgment.** Summary judgment of non-infringement is appropriate if "no reasonable jury could find infringement." *Ishida Co. v. Taylor*, 221 F.3d 1310, 1315 (Fed. Cir. 2000); *see* Fed. R. Civ. P. 56(a). "[A] mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment." *United Access Techs., LLC v. AT&T Corp.*, 2021 WL 1840785, at *3 (D. Del. 2021).

To avoid summary judgment of non-infringement, "a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that the features of the accused product would support a finding of infringement" under the proper claim construction. *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009).

**Infringement of means-plus-function limitations.** Section 112(6) governs means-plus-function limitations. Such limitations "cover the corresponding structure…described in the specification and equivalents thereof." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999). "Literal infringement of a § 112 ¶6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Id.*

11

"Structural equivalence under § 112 ¶6 is…'an application of the doctrine of equivalents in a restrictive role.'" *Id.* (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997). Specifically, the traditional doctrine-of-equivalents test asks whether the accused structure performs substantially the same function in substantially the same way to achieve substantially the same result. *Id.* The § 112(6) analysis is similar, but "narrower": the accused structure must perform the *same* claimed function in substantially the same way to achieve substantially the same result. *Id.*

"[T]he scope of [mean-plus-function] claim language is sharply limited to the structure disclosed in the specification and its equivalents." *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001). Or, as the Court aptly put it: "[Y]ou've got to find it in the patent." Markman Hr'g Tr. 37:6-17.[1]

Infringement of a means-plus-function claim is a factual question that may be resolved on summary judgment if there are no disputed issues regarding how the accused device operates. *Frank's Casing Crew & Rental Tools v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). A finding of no literal infringement of a means-plus-function limitation precludes a finding of

---

[1] For the Court's convenience, a copy of the *Markman* transcript is attached to the accompanying Statement of Undisputed Facts as Exhibit UU.

12

equivalence under the doctrine of equivalents, unless the accused product uses technology "developed after the patent is granted." *Chiuminatta*, 145 F.3d at 1310-11. Steuben has not alleged that the Hood Lines use after-arising technology, so Steuben cannot assert a doctrine-of-equivalents theory here. *See id.*

**B.   The Hood Lines do not infringe the "means for providing a plurality of bottles" limitation of the asserted claims because they lack a "pushing element" or equivalent.**

Each asserted claim requires a "means for providing a plurality of bottles." SUMF ¶1. This is a means-plus-function term construed to have the function "providing a plurality of bottles into the sterilization apparatus" and structure "a pushing element, and equivalents." Dkt. 531, 2; Markman Hr'g Tr. 26:14-17 (structure is "the pushing element that pushes the bottle into a lane that takes the bottles into the in-feed and sterilization apparatus"). The pushing element is item 84 below. SUMF ¶7.



FIG. 5

13

No reasonable jury could find that the Hood Lines infringe this limitation. The Hood Lines do not use a pushing element to provide bottles into the sterilization apparatus. Instead, ███████████████████████████████ pictured below, to provide bottles to a rotary wheel. Ex. I, 90.



These two structures operate in substantially different ways.

*First*, ████████████████████████████████████████████ ████████████████ SUMF ¶8. The pushing element, in contrast, uses lateral *linear* motion to push bottles forward. SUMF ¶9; *see* Ex. M ¶16 (Steuben's expert's testimony that "[t]he pushing elements operate by extending forward to push the bottles into the lanes of the sterilization chamber"). Steuben's expert Dr. Sharon admitted this. Ex. H, 18:13-22. ███████████████████ linear motion are substantially different. *See Welker Bearing Co. v. PhD, Inc.*, 550 F.3d 1090, 1100 (Fed. Cir. 2008) (affirming summary judgment of non-infringement of means-plus-function limitation because accused clamp used "linear-moving mechanism,"

14

whereas claimed clamp used "rotational mechanism"); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1361 (Fed. Cir. 2005) (rotatably mounted seat was "clear[ly], substantial[ly] differen[t]" from slidably mounted seat); *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1212-13 (Fed. Cir. 1998) (accused stepper motor did not power lever in substantially the same way as claimed solenoid because stepper motor "translate[d] its power into rotational motion, whereas the claimed solenoid use[d] linear motion").

*Second*, ██████████████████████████ whereas the patented pushing element intermittently retracts and extends to push the bottles. SUMF ¶¶10-11. ████████████ intermittent is a substantial difference. *See Mas-Hamilton*, 156 F.3d at 1213 (accused motor did not power lever in substantially the same way as claimed solenoid because motor operated intermittently, whereas solenoid "dr[ew] continuous power").

*Third*, ██████████████████████████████ ████████████████ whereas the patented pushing element pushes groups of six bottles at once. SUMF ¶12; Ex. A 5:4-41. This, too, is a substantial difference in the way the two structures operate. *Cf. Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1359 (Fed. Cir. 2000) (affirming summary judgment of non-infringement of "connecting" means limitation because accused product's mating "interference fit" connector, which used friction to hold parts together, was not

equivalent to threaded connector used in claimed device).

Given the substantial differences in the way the patented and accused structures operate, summary judgment is appropriate. The Federal Circuit has routinely found non-infringement as a matter of law on similar facts. For example, *General Protecht Group, Inc. v. International Trade Commission* reversed the Commission's finding of infringement of a means-plus-function limitation for lack of substantial evidence because the accused latching structure used a magnet, while the patented structure "employ[ed] a mechanical solution requiring the interaction of a number of separate parts." 619 F.3d 1303, 1313 (Fed. Cir. 2010). Similarly, *Toro Co. v. Deere & Co.* affirmed summary judgment of non-infringement of a means-plus-function limitation because no reasonable jury could conclude that an electrical solenoid system was equivalent to a mechanical cam system. 355 F.3d 1313, 1324 (Fed. Cir. 2004); *see also Chiuminatta*, 145 F.3d at 1309, 1311 (no reasonable jury could find that soft rubber wheels of accused product operated in substantially the same way as rigid metal "skid plate," even though both performed same function of supporting a concrete surface, because the "former supports the surface of the concrete by rolling over the concrete while the latter skids"). The same conclusion is warranted here.

Dr. Sharon has asserted that ███████████ is equivalent to a pushing element, but his conclusory testimony is entitled to no weight. Dr. Sharon contends

that the two elements both function to "provid[e] the bottles into the respective aseptic bottling machines," Ex. B ¶142, and that "[a]ny difference in the way the two structures provide bottles into the aseptic bottling apparatus would be viewed as insubstantial by a POSITA," *Id.*, ¶147. But even assuming that █████████ and the patented pushing element perform the same *function* of "driv[ing] the bottle into the machine," *Id.*, ¶152, Dr. Sharon's assertion that they do so in the same *way* is not credible. They plainly do not. *See, e.g.*, *Mas-Hamilton*, 156 F.3d at 1212-13.[2] Dr. Sharon's testimony is therefore insufficient to preclude summary judgment. *See Intellectual Sci.*, 589 F.3d at 1184-87 (conclusory expert testimony on equivalence insufficient to raise genuine disputed issue of material fact); *Arthur A. Collins, Inc. v. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert's unsupported conclusion on infringement will not create disputed issue of material fact).

**C.    The Hood Lines do not infringe the "means for filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute" limitation.**

Each asserted claim requires a "means for filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute." This limitation is

---

[2] Dr. Sharon's reply report does not even go so far as to say ███████████ ██████ pushing element operate in the same way. It simply says that the operation of the two elements is "not dissimilar." Ex. L, ¶26. That is legally insufficient to establish equivalence. *See Odetics*, 185 F.3d at 1267.

likewise subject to § 112(6). The claimed function was construed as "aseptically filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute," and the corresponding structure as "filling valves (Items 194A, 194B) and filling nozzles (Items 190A, 190B); a control system (Item 550); a conveyor plate (Item 94), conveyor (Item 106); and equivalents." Dkt. 531, 5-6. Figures 3 and 8 depict the conveyor and conveyor plate. SUMF ¶13.



FIG. 3



FIG. 8

### 1. No reasonable jury could find that the Hood Lines contain a "conveyor plate" or equivalent.

The conveyor plate 94 is a plate with twelve holes arranged in a 2x6 array in which the bottles rest. SUMF ¶14. As the Court made clear at the *Markman* hearing, because conveyor plate 94 is the *only* example of a conveyor plate disclosed in the specification, the claims are limited to that structure and equivalents. Markman Hr'g Tr. 38:17-19, 42:10-25 ("[The] plate disclosed in the patent…has…a two-by-six matrix, and you're not…able to point me to any other embodiment, so I've got to go with what's disclosed. I mean, that's what means-plus-function is.").

The Hood Lines, in contrast, ███████████████████████████████████ ████████████████ SUMF ¶¶15.

19



in a substantially different way from conveying

plate 94.

*First*, ██████████████████████████████, whereas the conveying

plate indexes the bottles in a two-by-six matrix. SUMF ¶¶16-17. The two-by-six

matrix is critical to the claimed invention. During reexamination of the patent, the

Examiner confirmed claim 19 because the prior art did not teach, among other

things, "a conveyor system which indexes a 2x6 matrix of bottles through the

various stations." Ex. N, 97-98. After having its claim confirmed due to this

limitation, Steuben cannot now argue the claim is not so limited. *See Frank's*

20

*Casing*, 389 F.3d at 1377 (relying on prosecution history to limit scope of permissible equivalent structures); *J&M*, 269 F.3d at 1367-68 (same).

    *Second,* ██████████████████████████████████████ whereas the conveying plate supports the bottles from below. SUMF ¶¶18-19. That is a substantial difference. *See Aspex Eyeware, Inc. v. Altair Eyewear, Inc.*, 288 F. App'x 697, 704 (Fed. Cir. 2008) (affirming summary judgment of non-infringement of "retaining mechanism" for eyeglass lenses because pins holding lenses in competitor's rimless eyeglasses in place were not substantially similar to frames described in the patent).

    *Third,* ████████████████████████████████████ whereas the conveying plate has fixed-size holes. SUMF ¶¶20-21. This, too, is a substantial difference. *See Frank's Casing*, 389 F.3d at 1378-79.

    *Fourth,* ████████████████████████████████████ ███████████████████████████ SUMF ¶25. The bottles in the patented structure, in contrast, remain in the same conveying plate as they move from station to station. SUMF ¶22. This, too, is a substantial difference. Accordingly, summary judgment of non-infringement is appropriate. *See Toro*, 355 F.3d at 1324.

    As with the "pushing element" limitation, Dr. Sharon's conclusory testimony regarding equivalence cannot create a genuine dispute of material fact. To be sure, "both structures hold the bottles in place as the bottles are conveyed

through the machine," Ex. B ¶285, but they do so in plainly different ways. Dr.

Sharon cannot avoid this fact simply by asserting it is not so. *See Intellectual Sci.*,

589 F.3d at 1184-87.

### 2. No reasonable jury could conclude that the Hood Lines contain a "conveyor" or equivalent.

As the Court has observed, Figures 3-4 depict the patented "conveyor."

SUMF ¶23, Markman Hr'g Tr. 40:4-6. The Hood Lines do not use a conveyor.

██████████████████████ depicted below. *See* Ex. J-1, HOOD-0000007, 19,

211, 361.



████████████████████ in a substantially different way than the

conveyor 106.

*First*, ████████████████████████████████

SUMF ¶23. The conveyor 106, in contrast, propels groups of bottles in a linear

motion along the path of the conveyor. SUMF ¶24. That is a substantial difference. *See Welker Bearing*, 550 F.3d at 1100; *Mas-Hamilton*, 156 F.3d at 1212-13; *see also Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 496 F. App'x 57 (Fed. Cir. 2012) (affirming summary judgment that accused exercise machine did not infringe "means for connecting" limitation because "connecting means" in accused machine moved in an arc whereas claimed "connecting means" moved linearly).

*Second*, █████████████████████████████████████████████ whereas the conveyor 106 moves the bottles intermittently, stopping at the various stations. SUMF ¶¶23-24. ████████████ intermittent motion are substantially different. *Mas-Hamilton*, 156 F.3d at 1213.

*Third*, as noted above, ██████████████████████████████████ ████████████████████████████████████████ whereas the bottles in the patented system remain in the same conveyor plate as they move between stations. SUMF ¶¶22, 25.

Given these substantial differences, summary judgment of non-infringement is appropriate. *See Toro*, 355 F.3d at 1324.

Yet again, Dr. Sharon's conclusory assertion that ██████████████████ are equivalent to the patented conveyor is entitled to no weight. *See Intellectual Sci.*, 589 F.3d at 1184-87. Moreover, Dr. Sharon's testimony regarding this limitation applies an incorrect legal standard. Dr. Sharon states that "a linear

conveyor would be understood to be interchangeable with ████████ the purpose of conveying bottles," Ex. B ¶279, but that is not the proper inquiry. Interchangeability "goes to the function or result of the[] systems, and begs the issue of the way [the purported equivalents] actually work." *Toro*, 355 F.3d at 1324; *see Chiuminatta*, 145 F.3d at 1309 ("Almost by definition, two structures that perform the same function may be substituted for one another."). Even assuming that the rotary wheel and the linear conveyor are "interchangeable" in *function*, they operate in substantially different *ways*.

## V.    Conclusion

The Court should grant summary judgment of non-infringement of the '188 patent.

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600


Dated: June 4, 2021

Respectfully submitted,

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants Shibuya Hoppmann Corporation, Shibuya Kogyo Co., Ltd., and HP Hood LLC*

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **Defendants' Opening Brief in Support of Their Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,536,188** complies with the typeface requirements and word limits of Paragraph 18 of the Scheduling Order entered in this case (D.I. 512). This brief has been prepared in 14-Point Times New Roman and contains 3,349 words, excluding the cover page, table of contents, table of authorities, signature block, and this certificate of compliance. Defendants' case dispositive motions and *Daubert* motions combined contain 12,500 words or less.

*/s/ Nathan R. Hoeschen*
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com

25

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on June 4, 2021, this document was served on

the persons listed below in the manner indicated:

**BY EMAIL**                                                    Cook Alciati
Timothy Devlin                                                 GARDELLA GRACE
DEVLIN LAW FIRM LLC                                            80 M Street SE, 1st Floor
1526 Gilpin Avenue                                             Washington, DC 20003
Wilmington, DE 19806                                           (703) 556-9600
(302) 449-9010                                                 calciati@gardellagrace.com
Fax: (302) 353-4251
tdevlin@devlinlawfirm.com


Olivia E. Marbutt
KENT & RISLEY LLC
5755 N. Point Parkway, Suite 57
Alpharetta, GA 30022
(404) 855-3865
oliviamarbutt@kentrisley.com


                                            */s/ Nathan R. Hoeschen*
                                            Karen E. Keller (No. 4489)
                                            Jeff Castellano (No. 4837)
                                            Nathan R. Hoeschen (No. 6232)
                                            SHAW KELLER LLP
                                            I.M. Pei Building
                                            1105 North Market Street, 12th Floor
                                            Wilmington, DE 19801
                                            (302) 298-0700
                                            kkeller@shawkeller.com
                                            jcastellano@shawkeller.com
                                            nhoeschen@shawkeller.com
                                            *Attorneys for Defendants Shibuya*
                                            *Hoppmann Corporation, Shibuya Kogyo*
                                            *Co., Ltd., and HP Hood LLC*