IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEUBEN FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted- Public Version** |
| | ) | |
| v. | ) | C.A. No. 19-2181-CFC-CJB |
| | ) | |
| SHIBUYA HOPPMANN CORP., | ) | ████████████████████ |
| SHIBUYA KOGYO CO., LTD., and | ) | ████████████████████ |
| HP HOOD LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT (NO. 2) OF
<u>NON-INFRINGEMENT OF U.S. PATENT NO. 6,702,985</u>**

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
  & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600

June 4, 2021

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants Shibuya
Hoppmann Corporation, Shibuya
Kogyo Co., Ltd., and HP Hood LLC*

# TABLE OF CONTENTS

I.      Nature and Stage of the Proceedings ................................................................1

II.     Summary of the Argument ................................................................................1

III.    Statement of Facts ...........................................................................................3

        A.     The '985 patent ...................................................................................3

        B.     The Hood Lines ...................................................................................4

IV.     Argument ......................................................................................................10

        A.     Legal Standard ..................................................................................10

        B.     The Hood Lines do not have ███████████████
               ███████. ........................................................................................11

               1.     The proper construction of "supply source" of
                      sterile air is "hardware that converts non-sterile air
                      to sterile air," and the "first," "second," and "third"
                      supply sources must be separate. ..............................................11

               2.     Under the proper construction, the Hood Lines do
                      not infringe ███████████████████
                      █████████████████████. ...........................................13

        C.     The Hood Lines do not infringe the "wherein said
               atomized sterilant is intermittently added to said conduit"
               limitation of the asserted claims. .........................................................15

V.      Conclusion ...................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dawn Equipment Co. v. Ky. Farms Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998) ...........................................................................10

*Duncan Parking Technologies, Inc. v. IPS Group, Inc.*,
    914 F.3d 1347 (Fed. Cir. 2019) ...........................................................................19

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009) ...........................................................................10

*Ishida Co. v. Taylor*,
    221 F.3d 1310 (Fed. Cir. 2000) ...........................................................................10

*Mas-Hamilton Grp. v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998) ...........................................................................18

*MiiCs & Partners, Inc. v. Funai Electric Co.*,
    2017 WL 5985561 (D. Del. 2017) .......................................................................16

*Tech. Properties Ltd. v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017) ...........................................................................13

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011) ...........................................................................16

*United Access Techs., LLC v. AT&T Corp.*,
    2021 WL 1840785 (D. Del. 2021).................................................................18, 19

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).........................................................................................10, 18

**Rules**

Fed. R. Civ. P. 56(a).................................................................................................10

## I.     Nature and Stage of the Proceedings

Steuben filed this patent-infringement lawsuit in 2010, asserting patents against aseptic filling machines Shibuya manufactured and sold to HP Hood. The case was transferred to this Court in November 2019. Dkt. 482. Discovery has concluded. Trial is set for November 2021.

## II.     Summary of the Argument

A.     The '985 patent asserted claims require a first, second, and third "supply source" of sterile air. No reasonable jury could conclude that the Hood Lines have the requisite three supply sources.

Steuben's infringement theory fails as a matter of law because it relies on an insupportable claim construction of "supply source" to mean a "flow of air." Both the intrinsic and extrinsic evidence demonstrate that this construction is incorrect. In the context of these claims, a skilled artisan would understand "supply source" of sterile air to mean "hardware that converts non-sterile air to sterile air." Steuben has not shown—and cannot show—infringement under this construction because the ███████████████████████████████████████.

B.     The asserted claims likewise require an "atomizing system" that "intermittently add[s]" atomized sterilant to a conduit. The conduit also receives a "non-intermittent supply of hot sterile air" from the "second supply source." The

hot sterile air and the atomized sterilant are applied to the containers during the sterilization process.

No reasonable jury could find that the Hood Lines infringe this limitation. ███████████████████████████████████████████████████████████.

Steuben does not dispute this fact. Instead, Steuben attempts to avoid it by offering three tortured infringement theories. But each fails as a matter of law.

*First*, Steuben argues that, as a matter of claim construction, the "intermittently added" limitation does not actually require sterilant to be intermittently added and instead is infringed by the mere *capability* of intermittently adding sterilant. Federal Circuit precedent forecloses this theory.

*Second*, Steuben relies on a Hood document that it claims ██████ ████████████████████████████████████████████. But Defendants have offered uncontroverted evidence that the machine described in this document ██████████████████████. This theory thus fails as a matter of law too.

*Third*, Steuben advances a doctrine-of-equivalents argument, asserting that the Hood Lines' ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ are equivalent to the claimed intermittent addition of atomized sterilant. This theory fails because it vitiates the limitation requiring intermittent addition of atomized sterilant.

The Court should grant summary judgment of non-infringement.

## III.    Statement of Facts

### A.    The '985 patent

The '985 patent claims a sterilization apparatus with three "supply sources" of sterile air. SUMF ¶1. Air from the first supply source atomizes the sterilant; air from the second supply source blows the atomized sterilant onto the containers; and air from the third supply source activates and dries the sterilant on the container surface. Ex. O, 2:42-50, 9:31-34, 9:63-67, 12:30-37.

Figure 21 (annotated below) depicts the first and second supply sources.



The first supply of sterile air comes from sterile filter 340 through conduit 346 and then conduit 348. *Id.*, 9:9-30. The second supply of sterile air comes from sterile

3

filter 372 and then joins the first supply of sterile air in conduit 348. *Id.*, 9:46-58.

"[T]he second supply of hot sterile air is continuously blowing, whereas the first

supply of sterile air and hydrogen peroxide [i.e., sterilant] in conduit 346 is

intermittent corresponding to the movement of the bottles 12." *Id.*, 10:1-4. The

third supply of sterile air, which passes through conduit 148, comes from "sterile

air supply system 146," *id.*, 12:30-34, highlighted below:



Thus, each of the three sources of sterile air in the patented machine is an

independent piece of hardware that converts non-sterile air to sterile air.

## B.     The Hood Lines

Steuben accuses HP Hood's P4, P6, and P7 Lines of infringing the '985

patent. SUMF ¶2. The Hood Lines differ in substantial ways from the patented

bottling apparatus. Two differences are relevant here.



---

[1] Larger versions of these schematics are attached to the accompanying Statement of Undisputed Material Facts.







███████████████████████████████

███████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

## IV.    Argument

### A.    Legal Standard

Summary judgment of non-infringement is appropriate if "no reasonable jury could find infringement." *Ishida Co. v. Taylor*, 221 F.3d 1310, 1315 (Fed. Cir. 2000); *Dawn Equipment Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1017 (Fed. Cir. 1998); *see* Fed. R. Civ. P. 56(a). To avoid summary judgment, "a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement" under the correct claim construction. *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009).

With respect to doctrine-of-equivalents infringement theories, the Supreme Court has made clear that "district courts are obliged to" grant summary judgment of non-infringement "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent." *Dawn Equipment*, 140 F.3d at 1017 (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)).

**B.      The Hood Lines do not have ███████████████████.**

     **1.      The proper construction of "supply source" of sterile air is "hardware that converts non-sterile air to sterile air," and the "first," "second," and "third" supply sources must be separate.**

The asserted claims cover a sterilization apparatus with "first," "second," and "third" supply sources of sterile air. SUMF ¶1. The Court deferred construction of these terms at the *Markman* hearing. Dkt. 531, 7.

A "supply source" of sterile air should be construed as "hardware that converts non-sterile air to sterile air." And the three supply sources must be separate from one another. This construction is consistent with the specification, which states that the invention "includes a plurality of sterile air supply sources," each producing air that serves a different function: air from the first supply source "atomize[s] a sterilant," air from the second supply source "provide[s] hot sterile air to the atomized sterilant," and air from the third supply source "provide[s] hot sterile air for activating and drying the sterilant." Ex. O, 2:40-48. This construction is consistent with the understanding of a skilled artisan. Ex. Q ¶¶145-151. And it is consistent with the Court's comments at the *Markman* hearing. As the Court observed, "whatever structure within which [the sterilization] is done…that becomes a supply source." *Markman* Hr'g Tr. 105:11-14. And the three "supply sources" are "clearly different." *Id.* 101:14-17; *id.* 110:20-111:3 (supply sources "have to be different" and cannot be "one source of supply with three pipes").

11

Steuben agrees that the three supply sources must be separate. Ex. P ¶356. But Steuben's expert's infringement analysis construes "supply source" to mean simply a "flow of sterile air." *Id*. This position is directly contrary to the Court's statement that "the first supply source of sterile air is not referring to hot sterile air." *Markman* Hr'g Tr. 104:22-23.

Beyond the Court's comments at the *Markman* hearing, there are two additional reasons why Defendants' construction is correct and Steuben's is wrong.

*First*, Steuben's proposed construction makes hash of the remaining claim language. Claim 1, for example, recites that "sterile air *from the first supply source*" is mixed with sterilant. If "supply source" itself meant the air, this phrase would make no sense. Claim 6 recites that "the second supply source of non-intermittent hot sterile air further includes a humidity control system." It would make no sense to add a "humidity control system" to a "flow" of air, but it is "perfectly logical to add such a control system to a piece of hardware that converts nonsterile air to sterile air." Ex. Q ¶148. Finally, claim 12 recites that the "supply source of sterilant further includes a spoon dipper apparatus." Again, it only makes sense to add a spoon dipper apparatus to hardware. *Id.* ¶149.[2]

---

[2] Claim 8 recites that the "third supply source of hot sterile drying air is applied to the container for about 24 seconds." Ex. O, 20:13-15; *see also id.*, 19:58-60 (reciting application of "atomized sterilant and the second supply source of hot sterile air on to the container"). Steuben's expert has argued that "if 'supply source' refers to a flow of air, th[is] claim makes sense because it would recite that

*Second*, during reexamination, the patentee's expert argued that the Andersson reference did not have three supply sources because it "us[ed] only one source of air for both atomizing and drying." SUMF ¶14. Thus, even Steuben's own reexamination expert agreed that a single source of air split into two different "flows" is still a single "supply source." Steuben's current position must be rejected because it is flatly inconsistent with how the patentee characterized his invention to the U.S. Patent Office. *See Tech. Properties Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1357-58 (Fed. Cir. 2017).

## 2. Under the proper construction, the Hood Lines do not infringe because ███████████████████████████ ████████████

As explained above, the Hood Lines have ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

Steuben has offered no contrary evidence. Dr. Sharon analyzes infringement only under his incorrect interpretation of "supply source" as a "flow of air." Ex. P ¶¶367-368, 375-377, 407-408; Ex. S, 72:19-73:9, 75:17-25, 78:6-18; 106:18-107:3.

---

the flow of air is applied to the bottles for 24 seconds." Ex. P ¶358. But any linguistic difficulty with claim 8 resulting from Defendants' construction pales in comparison to the problems Steuben's construction introduces with claims 1, 6, and 12.

And Dr. Sharon admitted that he was not "able to follow" the schematics that show the sterile-air sources in the Hood Lines. Ex. S, 91:19-94:17.[3] Finally, while Dr. Sharon's opening report cites a Hood document



Steuben thus has a fatal failure of proof. Defendants have shown that, under the correct construction, ██████████████████████████████████████. Steuben has presented no contrary evidence. *See* SUMF ¶11; Ex. S, 106:18-107:3 (Dr. Sharon admitting that he has not offered any opinion on infringement by the actual Hood Lines under Defendants' construction).

---

[3] ██████████████████████████████████████████████

**C.      The Hood Lines do not infringe the "wherein said atomized sterilant is intermittently added to said conduit" limitation of the asserted claims.**

Both asserted claims also require an "atomizing system producing an atomized sterilant" that is coupled to a conduit. The atomized sterilant is "intermittently added" to the conduit. Ex. O, 19:56-57. The Court construed "intermittently added" to mean "in a non-continuous manner." Dkt. 531, 7.

No reasonable jury could conclude that the Hood Lines infringe this limitation. ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ This difference makes sense given the differences in the patented and accused machines: the patented machine sterilizes bottles intermittently in batches, so continuously adding sterilant would be wasteful. ████████████████████████ ████████████████████████████████████████ ████████████████████

Dr. Sharon has offered three infringement theories for this limitation. Each fails as a matter of law.

**1.**      Dr. Sharon's first theory is that the claim merely requires the *capability* of intermittently adding atomized sterilant to the conduit. Ex. P ¶¶383-

384. From this premise, Dr. Sharon argues that the Hood Lines infringe because they could be *altered* ████████████████████████████. *Id.*

The premise fails as a matter of claim construction. The claim requires that "said atomized sterilant is intermittently added to said conduit." That means that the sterilant is *actually* added intermittently—not that the apparatus is merely *capable* of intermittently adding sterilant or could be altered to do so. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381-82 (Fed. Cir. 2011) (term "operating in conjunction" required actually operating in conjunction, meaning that accused device that had capability to operate in conjunction with, but was not configured to do so, did not infringe); *MiiCs & Partners, Inc. v. Funai Electric Co.*, 2017 WL 5985561, *1-4 (D. Del. 2017) (limitation reciting "liquid crystal layer being divided into a plurality of regions having different orientation of liquid crystal for one of said pixel electrodes" specified structural requirement and did *not* mean merely that crystal layer was *capable* of being so divided).

Moreover, even if Dr. Sharon's claim construction were correct, his theory would still fail. Dr. Sharon admitted that he has not "done the detailed analysis" to determine whether the Hood Lines ████████████████████████ ████████████████. Ex. S, 111:23-112:1.

**2.**     Dr. Sharon's second theory is based on a document—████████████ ████████████████████████████████████████████████████

16

█████████████████████████████████████████████

██████████████████████████████████

██████████████████████. Ex. Z, 91:4-12; 103:22-104:3; 105:12-15. Steuben

has offered no contrary evidence. The accused products here are the *actual* Hood

Lines, ██████████████████████████████. This theory, too, therefore

fails as a matter of law.[4]

> **3.**      Dr. Sharon's final theory is a tortured doctrine-of-equivalents

argument. Dr. Sharon asserts that the "intermittently added" limitation is infringed

by Hood Lines' ███████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████, on the one hand, is equivalent to intermittently

---

[4] ███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

transferring *atomized* sterilant from the atomizing system to a container of foodstuffs, on the other. Ex. P ¶¶394-403; Ex. R ¶105.

This strained argument suffers from myriad fatal flaws. For present purposes, it is sufficient to identify only one: this theory would vitiate entirely the claim limitation requiring that atomized sterilant be intermittently added to a conduit. ███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████ *See Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213 (Fed. Cir. 1998) (noting the substantial difference between continuous and intermittent motion). It would thus be legally improper to bring these machines within the scope of the claim. *See Warner-Jenkinson*, 520 U.S. at 29, 40 (doctrine of equivalents cannot be applied "to eliminate completely any [claimed] elements"); *United Access Techs., LLC v. AT&T Corp.*, 2021 WL 1840785, at *5 (D. Del. 2021) (granting summary judgment of non-infringement under doctrine of equivalents because patentee's theory would vitiate claim limitation).

The Federal Circuit's decision in *Duncan Parking Technologies, Inc. v. IPS Group, Inc.*, 914 F.3d 1347 (Fed. Cir. 2019), is instructive. The patent claimed a parking meter with buttons on its cover panel, which was part of the device's housing. *Id.* at 1362. The patentee argued that a meter with buttons attached to the *device itself* infringed under the doctrine of equivalents. *Id.* The Court rejected that argument because the patentee's theory "would essentially void the claim limitation" requiring buttons on the *cover panel*. *Id.*

The same conclusion is appropriate here. Steuben's doctrine-of-equivalents theory would vitiate the "intermittently added to [the] conduit" "between [the] atomizing system and [the] container" limitation. That would be particularly improper given that the claim itself distinguishes "intermittent" and "non-intermittent" application. *Compare* Ex. O, 19:52-55 ("non-intermittent supply of hot sterile air"), *with id.* 19:56-57 ("atomized sterilant is intermittently added to said conduit"). Steuben's theory therefore fails as a matter of law.

## V.    Conclusion

The Court should grant summary judgment of non-infringement of the '985 patent.

19

Respectfully submitted,

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600

*Attorneys for Defendants Shibuya*
*Hoppmann Corporation, Shibuya*
*Kogyo Co., Ltd., and HP Hood LLC*

Dated: June 4, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing **Defendants' Opening Brief in Support of Their Motion for Summary Judgment (No. 2) of Non-Infringement of U.S. Patent No. 6,702,985** complies with the typeface requirements and word limits of Paragraph 18 of the Scheduling Order entered in this case (D.I. 512). This brief has been prepared in 14-Point Times New Roman and contains 3,250 words, excluding the cover page, table of contents, table of authorities, signature block, and this certificate of compliance. Defendants' case dispositive motions and *Daubert* motions combined contain 12,500 words or less.

*/s/ Nathan R. Hoeschen*
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on June 4, 2021, this document was served on

the persons listed below in the manner indicated:

**BY EMAIL**
Timothy Devlin
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
Fax: (302) 353-4251
tdevlin@devlinlawfirm.com

Cook Alciati
GARDELLA GRACE
80 M Street SE, 1st Floor
Washington, DC 20003
(703) 556-9600
calciati@gardellagrace.com

Olivia E. Marbutt
KENT & RISLEY LLC
5755 N. Point Parkway, Suite 57
Alpharetta, GA 30022
(404) 855-3865
oliviamarbutt@kentrisley.com

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants Shibuya
Hoppmann Corporation, Shibuya Kogyo
Co., Ltd., and HP Hood LLC*