IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEUBEN FOODS, INC., | ) |
| | ) |
| Plaintiff, | ) Redacted- Public Version |
| | ) |
| v. | ) C.A. No. 19-2181-CFC-CJB |
| | ) |
| SHIBUYA HOPPMANN CORP., | ) |
| SHIBUYA KOGYO CO., LTD., and | ) |
| HP HOOD LLC, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT (NO. 4) OF
INVALIDITY OF U.S. PATENT NOS. 6,536,188 AND 6,209,591**

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants Shibuya
Hoppmann Corporation, Shibuya
Kogyo Co., Ltd., and HP Hood LLC*

June 4, 2021

# **TABLE OF CONTENTS**

I. Nature and Stage of the Proceedings ................................................................1

II. Summary of the Argument ...............................................................................1

III. Statement of Facts.............................................................................................3

IV. Argument ..........................................................................................................5

    A. Legal Standards .....................................................................................5

    B. The claim terms "at a rate greater than 100 bottles per minute" and "at a rate of more than 350 bottles per minute" do not have an explicit or implicit upper limit. .......................6

    C. The asserted claims are invalid for lack of enablement. .......................7

    D. The asserted claims are invalid for lack of written description. ........................................................................................10

V. Conclusion ......................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ..................................................................................9

*Application of Fisher*,
  427 F.2d 833 (C.C.P.A. 1970) ....................................................................................8

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) .............................................................................5, 10

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ..................................................................................5

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*,
  687 F.3d 1377 (Fed. Cir. 2012) ...............................................................................5, 8

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ................................................................................................1, 6

*Steuben Foods, Inc. v. Oystar USA, Inc.*,
  2021 WL 630906 (W.D.N.Y. 2021) ...........................................................................7

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
  806 F.3d 1356 (Fed. Cir. 2015) ..................................................................................6

*Univ. of Rochester v. G.D. Searle & Co.*,
  358 F.3d 916 (Fed. Cir. 2004) ....................................................................................6

**Statutes**

35 U.S.C. § 112 ................................................................................................................5

## I. Nature and Stage of the Proceedings

Steuben filed this patent-infringement lawsuit in 2010, asserting several patents against aseptic filling machines Shibuya manufactured and sold to HP Hood. The case was transferred to this Court in November 2019. Dkt. 482. Discovery has concluded. Trial is set for November 2021.

## II. Summary of the Argument

The asserted claims of the '188 and '591 patents require an aseptic filling machine that operates at a rate "greater than 100 bottles per minute" and "more than 350 bottles per minute," respectively. These claim terms do not have an explicit or implicit upper limit. The specification does not suggest any upper limit; Steuben has never argued there is a specific upper limit; and, in parallel cases Steuben filed in the Western District of New York, both the magistrate judge and district judge concluded there is no upper limit. Even Steuben's own expert Dr. Sharon has been unable to identify a *specific* upper limit, instead asserting vaguely that the claims have some (unidentified) "reasonable upper bound range."

Steuben's attempt to claim an essentially unbounded range was no accident. Steuben *wanted* broad claims so competitors could not escape them by increasing the throughput of their competing machines—even if the increased throughput was due to an entirely different invention. *See* Dkt. 526, 77-78 (Steuben *Markman* brief) ("If the disinfecting or filling process operates at rates greater than 100/350

1

bottles per minute, it is within the scope of the patent."). But broad claims come with a price: they are valid only if the specification enables and describes their full scope. The specifications here do not.

**Enablement.** Steuben has never argued that the specifications would have enabled a skilled artisan to make an aseptic bottling machine with an unlimited throughput. Accordingly, because the claims lack any upper bound on the throughput, they are invalid for lack of enablement. Moreover, even if the claims have some (undefined) upper limit, as Dr. Sharon has argued, they *still* lack enablement because the specification does not explain how a skilled artisan would modify the machine to achieve a greater throughput than a preferred embodiment that supposedly operates at 360 bottles per minute.

**Written description.** The claims are also invalid for lack of written description. The specification does not describe—and the inventor did not possess—an aseptic bottling machine capable of an arbitrarily high throughput. The '188 patent has little to nothing to say about processing speed, and, at best, the '591 patent describes a machine capable of operating at a 360-bottles-per-minute rate. But Dr. Sharon testified that the claims cover throughputs at least into the *thousands* of bottles per minute. Because the upper end of the claimed range—wherever it may be—is not adequately described, the claims are invalid.

### III. Statement of Facts

The '188 and '591 patents relate to aseptically processing and packaging food "at a high output processing speed." SUMF ¶1. The inventor Mr. Taggart emphasized that his aseptic filling system is different because it "has high production rates." Ex. SS 16:10-14. Thus, the limitations reciting high throughput rates are important.

The '188 patent's asserted claims require an aseptic bottling machine that fills bottles "at a rate greater than 100 bottles per minute." SUMF ¶2. Similarly, the asserted claim of the '591 patent requires an aseptic bottling machine that controls the flow of "product into a bottle at a rate of more than 350 bottles per minute." SUMF ¶3.

On their face, these claim terms contain no upper bound. SUMF ¶4. Dr. Sharon admitted this. *See* Ex. PP 364:10-16; Ex. QQ 168:25-169:11, 169:17-170:5. And Steuben has never argued that these claims contain any specific implicit upper limit.

Steuben's original position was that the claims have *no* upper limit. *See, e.g.*, Dkt. 526, 77-78. Dr. Sharon has now argued that the claims have some "practical upper limit." Ex. TT ¶514. But Dr. Sharon has never been able to articulate what that limit is. The closest he came was a vague statement at his deposition—which he later walked back—that the limit "was, like, you know, somewhere in the 1,000

3

to 2,000 bottles per minute." Ex. QQ 171:2-4; *but see id.*, 171:9-11 ("[T]hat is, roughly, the range that made sense to me. But the exact number is not the issue."); *id.*, 177:2-3 ("I'm not going to put a specific number on it"); *id.*, 183:9-24 (refusing to say whether the claim would cover a rate of 2,500 bottles per minute).

Despite the unbounded claimed range, the patents do not describe how to implement a machine at every speed above 100 bottles per minute. SUMF ¶5. The '188 specification states that the invention can process 100 bottles per minute but provides no detail regarding how that speed is achieved. *See generally* Ex. LL. The '591 specification explains only that the "product filler apparatus 160" fills approximately eight ounces in 1.5 seconds, which "allows the conveying apparatus 100 to move the bottles through the aseptic processing apparatus 10 at speeds greater than about 350 bottles 12 per minute." Ex. MM 15:51-61. The specification does not describe how the filling apparatus can fill eight ounces in 1.5 seconds or how the other components of the machine must be designed and operated to achieve the claimed rate.

Mr. Taggart admitted that the specifications do not instruct a skilled artisan how to make a machine with an arbitrarily high throughput—after all, a speed of 100,000 bottles a minute is "not very practical." SUMF ¶6; Ex. SS 414:22-24, 505:25-506:6. Although the speed of the patented apparatus must have some practical upper limit governed by the strength of the materials used, the speed of

available means used to power the mechanisms, and the time required to activate and dry the sterilant on the bottles, the patents do not indicate how to ascertain any such limit. SUMF ¶7-8; *see generally* Ex. LL; Ex. MM.

## IV.   Argument

### A.   Legal Standards

A patent must "contain a written description of the invention, and the manner and process of making and using it" that enables a skilled artisan to practice the invention. 35 U.S.C. § 112 ¶1. Section 112 contains an "enablement" requirement (the specification must enable a skilled artisan to make and use the invention) and a "written description" requirement (the specification must describe the invention in sufficient detail to demonstrate that the inventor had possession of the invention). *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344, 1351 (Fed. Cir. 2010) (en banc). These requirements must be met *as of the filing date*; a patentee cannot reap the benefit of later developments. *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). And the patent must describe and enable the "full scope" of the claims. *Id.*; *see LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

Enablement is a question of law based on underlying facts. *MagSil*, 687 F.3d at 1380. Written description is a question of fact but may be resolved as a matter of law when a reasonable jury could reach only one conclusion. *See Ariad*, 598 F.3d

at 1355. A patent can invalidate itself on its face for lack of written description. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 930 (Fed. Cir. 2004).

This motion also involves the proper construction of the claim terms "greater than 100 bottles per minute" and "more than 350 bottles per minute"—specifically, whether these terms have an implicit upper limit. That is an issue of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

**B.     The claim terms "at a rate greater than 100 bottles per minute" and "at a rate of more than 350 bottles per minute" do not have an explicit or implicit upper limit.**

On their face, these claim terms have no upper limit. They require the throughput to exceed 100 or 350 bottles per minute, but they provide no upper bound. Nor does the specification suggest any upper limit. That should be the end of the matter: the claims should be construed to mean what they say. *See Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015).

Steuben has never argued that there is any specific upper limit to the claimed throughput. On the contrary, Steuben's own expert has admitted that the claims do not have an upper bound. Ex. QQ 168:25-169:11, 170:1-5; Ex. PP 364:10-16. The inventor likewise agreed that he "d[id] not read an upper limit" on the claims reciting "greater than 100 bottles per minute." Ex. SS 494:20-25, 415:2-16. And Steuben, in its *Markman* briefing, stated that there is no upper limit: "If the

6

disinfecting or filling process operates at rates greater than 100/350 bottles per minute, it is within the scope of the patent." Dkt. 526, 77-78.

Both the magistrate judge and district judge recently reached this conclusion in the parallel lawsuits Steuben is litigating in New York. A skilled artisan, both judges concluded, would not have understood the claim term "'at a rate greater than 100 bottles per minute' to have an implicit upper limit." *Steuben Foods, Inc. v. Oystar USA, Inc.*, 2021 WL 630906, at *10 (W.D.N.Y. 2021). The court explained that Steuben had "pointed to no intrinsic evidence supporting the conclusion that such an implicit limit exists, and…the defendants' experts unanimously opined" that a skilled artisan would not interpret the claims to include an upper limit. *Id.* Accordingly, the court construed the term to mean "at a rate greater than 100 bottles per minute, with no upper limit on said rate." *Id.* This Court should reach the same conclusion: these claim terms have no upper limit.

### C. The asserted claims are invalid for lack of enablement.

Steuben has never argued that the patent specifications would enable a skilled artisan to design an aseptic bottling machine with an unlimited throughput. And they plainly would not, as Taggart himself admitted. SUMF ¶6; *see* Ex. SS 414:12-24. Accordingly, given that the recited throughput lacks any upper bound, the claims are invalid for lack of enablement.

7

*MagSil* is instructive. The patent claimed an electrical device with a "tunnel junction" between two electrodes that could "cause[] a change in the resistance by at least 10% at room temperature." 687 F.3d at 1379. On their face, the claims "cover[ed] resistance changes beyond 120% and up to infinity," but the patentee had achieved resistance changes of only 11.8% at the time of filing. *Id.* at 1379-81, 1383. The court affirmed summary judgment of no enablement because a skilled artisan "could not have taken the disclosure in the specification regarding 'change in the resistance by at least 10% at room temperature' and achieved a change in resistance in the full scope of that term without undue experimentation." *Id.* at 1381. The court determined that "[t]he specification enabled a marginal advance over the prior art, but did not enable at the time of filing a tunnel junction of resistive changes reaching even up to 20%, let alone the more recent achievements above 600%." *Id.* "[T]he open claim language chosen by the inventors d[id] not grant them any forgiveness on the scope of the required enablement." *Id.* at 1383; *see also Application of Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970) (claim to medical preparation "containing at least 1 International Unit of ACTH per milligram" was invalid because the patentee had not "enabled the preparation of ACTHs having potencies much greater than 2.3").

A similar outcome is warranted here. Steuben drafted these claims broadly to cover an aseptic filler with an arbitrarily high throughput, but that broad claim

8

comes with a price: Steuben does not and cannot argue that the specification enables that full claim scope. Indeed, the *inventor himself* has admitted otherwise.

To be sure, open-ended claims are not always invalid; in some contexts, a skilled artisan would recognize that a facially open-ended claim has an upper limit inherent in the technology. For instance, a claim to a formulation having a pH greater than 9 would be understood to have an inherent limit of 14 because the pH scale runs from 0 to 14. So, in a case about a polymer-wood fiber composite having a Young's modulus (a measure of tensile strength) greater than 500,000, it was understood that the upper limit lay "somewhere between the Young's modulus of the wood fiber and that of the polymer used in the composition." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1376 (Fed. Cir. 2007).

But this is not such a case. No one has identified an upper limit inherent in the claimed technology apart from some (undefined) upper limit imposed by the laws of physics. Furthermore, the specification does not teach how to approach any such limit; at most, it enables a preferred embodiment that operates at a rate of 360 bottles per minute. *See* SUMF ¶10. The specification contains no detail describing how a skilled artisan would modify the machine to achieve the maximum speed allowed by the laws of nature, whatever that is. SUMF ¶8.

9

### D. The asserted claims are invalid for lack of written description.

Steuben's claims are invalid for a second reason: they lack sufficient written description. The analysis for written description "compares the claims with the invention disclosed in the specification, and if the claimed invention does not appear in the specification…[the claim] fails regardless of whether one of skill in the art could make or use the claimed invention." *Ariad*, 598 F.3d at 1348. As explained above, the inventor did not have possession of the full scope of these claims at the time of invention. The patents describe, at most, disinfecting bottles at a rate of about 100 bottles per minute and filling bottles at a rate of about 360 bottles per minute. SUMF ¶10; *see generally* Ex. LL; Ex. MM.

Taggart indisputably did not possess a machine that could, for example, disinfect or fill 2,000—or even 400—bottles per minute; indeed, he never built a working embodiment at all. SUMF ¶9. The specifications do not come close to describing a device that achieves arbitrarily large filling, disinfecting, or dispensing rates. SUMF ¶¶6, 10. The patentee's failure to describe the complete range encompassed by the claims is fatal. *Cf. Ariad*, 598 F.3d at 1350 ("[M]erely drawing a fence around the outer limits of a purported genus is not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species.").

## V. Conclusion

The Court should grant summary judgment that the asserted claims of the '188 and '591 patents are invalid.

Respectfully submitted,

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants Shibuya Hoppmann Corporation, Shibuya Kogyo Co., Ltd., and HP Hood LLC*

OF COUNSEL:
J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
(202) 371-2600

Dated: June 4, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **Defendants' Opening Brief in Support of Their Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 6,536,188 and 6,209,591** complies with the typeface requirements and word limits of Paragraph 18 of the Scheduling Order entered in this case (D.I. 512). This brief has been prepared in 14-Point Times New Roman and contains 2,439 words, excluding the cover page, table of contents, table of authorities, signature block, and this certificate of compliance. Defendants' case-dispositive motions and *Daubert* motions combined contain 12,500 words or less.

                                                                  */s/ Nathan R. Hoeschen*
                                                                  Nathan R. Hoeschen (No. 6232)
                                                                  SHAW KELLER LLP
                                                                  I.M. Pei Building
                                                                  1105 North Market Street, 12th Floor
                                                                  Wilmington, DE 19801
                                                                  (302) 298-0700
                                                                  nhoeschen@shawkeller.com

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on June 4, 2021, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**
Timothy Devlin
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
Fax: (302) 353-4251
tdevlin@devlinlawfirm.com

Olivia E. Marbutt
KENT & RISLEY LLC
5755 N. Point Parkway, Suite 57
Alpharetta, GA 30022
(404) 855-3865
oliviamarbutt@kentrisley.com

Cook Alciati
GARDELLA GRACE
80 M Street SE, 1st Floor
Washington, DC 20003
(703) 556-9600
calciati@gardellagrace.com

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants Shibuya*
*Hoppmann Corporation, Shibuya Kogyo*
*Co., Ltd., and HP Hood LLC*