# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEUBEN FOODS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2181-CFC-CJB |
| | ) | |
| SHIBUYA HOPPMANN CORP., | ) | |
| SHIBUYA KOGYO CO., LTD., and | ) | |
| HP HOOD LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

The Court, having reviewed the parties' joint motion regarding a discovery dispute ("Motion"), (D.I. 580), the briefing and other materials related thereto, (D.I. 581; D.I. 582; D.I. 588; D.I. 589; D.I. 590), and having heard argument during a teleconference held on March 15, 2021 ("the teleconference")[1], hereby ORDERS as follows with regard to the two remaining disputed issues that the Court did not resolve during the teleconference[2]:

1. These disputes have to do with documents and communications related to two opinions of counsel (the "opinions of counsel") that were authored by Leslie L. Bookoff ("Mr. Bookoff") and provided to Defendant HP Hood LLC ("HP Hood"). Mr. Bookoff worked at the law firm of Finnegan Henderson ("Finnegan") until August 2012 when he founded his own firm, Bookoff McAndrews LLP. (D.I. 582 at 1)[3] Mr. Bookoff authored the opinions of counsel in January 2013 and November 2013, respectively. (D.I. 590 at ¶¶ 3-4) In the opinions of counsel, Mr. Bookoff opines on the issues of

---

[1] Citations to the transcript of the March 15 teleconference will be to "Tr."

[2] Plaintiff also raised a third disputed issue via the Motion: it sought production of certain documents regarding Plaintiff's patents that Defendant HP Hood LLC had withheld from production. (D.I. 581 at 1) The Court resolved this issue during the teleconference, (*see* Tr. at 45-46), and will therefore not address it in this Memorandum Order.

[3] In August 2012, when Mr. Bookoff left Finnegan and founded Bookoff McAndrews LLP, he took his files concerning HP Hood with him to the new firm. (D.I. 582 at 1)

infringement, validity and claim construction as related to Plaintiff Steuben Foods, Inc.'s ("Plaintiff") asserted patents.

2. HP Hood produced the opinions of counsel to Plaintiff on November 7, 2020. (D.I. 581 at 1) Thereafter, Plaintiff pursued discovery from Mr. Bookoff related to the opinions, seeking documents and Mr. Bookoff's deposition. (*Id.* & exs. 1-2)

3. As noted above, there are two remaining disputes here. First, Plaintiff argues that, in light of the opinions of counsel, HP Hood should produce to Plaintiff: "communications between [HP Hood] and its outside [trial] counsel [Sterne, Kessler, Goldstein & Fox PLLC ("Sterne, Kessler" or "trial counsel")] on the issue of claim construction[,]" "communications between opinion [counsel (i.e., Mr. Bookoff)] and trial counsel" and "any files from Mr. Bookoff's former firm[,]" Finnegan—but only to the extent that those communications/files relate to the subject matter of Mr. Bookoff's opinions of counsel. Second, Plaintiff asserts that HP Hood should produce to Plaintiff communications internal to HP Hood relating to the subject matter of the opinions of counsel. (*Id.* at 1, 2-3; *see also* D.I. 582 at 2-3)[4] The Court will address these disputes in turn.

4. Turing to the first dispute, here Plaintiff seeks, *inter alia*, certain communications between HP Hood and Sterne, Kessler regarding claim construction.[5] In *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007),

---

[4] In its letter briefing, Plaintiff appeared to be seeking all of the above-referenced communications or documents, regardless of whether those communications had anything to do with the claims/claim terms/non-infringement or invalidity arguments *that were actually pressed in the opinions of counsel*. (*See* D.I. 581 at 1) During the teleconference, however, Plaintiff's counsel agreed that Plaintiff was "willing to narrow" its request to exclude documents that "ha[ve] no impact or no . . . bearing on [the claim terms discussed in] the opinion[s of counsel.]" (Tr. at 18) Below, then, the Court will assume that any sought-after categories of communications or documents are only requested to the extent that their subject matter overlaps with subject matter discussed in the opinions of counsel.

[5] With regard to the other two categories of communications/documents that Plaintiff sought regarding this first dispute (i.e., "communications between opinion and trial counsel" and "any files from [Finnegan]"), (D.I. 581 at 1), the Court DENIES those requests as MOOT and will not further address them below. That is because Defendants have represented that: (1) "to the extent communications were found between anyone at Mr. Bookoff's firm and trial counsel on the subject matter of his opinions, those communications have already been produced"; and (2) so far as Defendants are aware, Mr. Bookoff took all of his case files with him from Finnegan when he founded his current firm, and Defendants have searched those case files and produced from them any documents relating to Mr. Bookoff's opinions of counsel. (D.I. 582 at 2 (emphasis omitted); Tr. at 33, 35, 42) In light of this, the Court does not have a

the United States Court of Appeals for the Federal Circuit held that "as a general proposition, [] asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).[6] The *Seagate* Court reached its conclusion after, *inter alia*, noting the "significantly different functions of trial counsel and opinion counsel[.]" *Id*. at 1373. To that end, it reasoned that "[w]hereas opinion counsel serves to provide an objective assessment for making informed business decisions," trial counsel is engaged in an "adversarial process" and "focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker." *Id*. That said, the *Seagate* Court explained that its decision regarding waiver was not an "absolute rule[,]" as "trial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery." *Id.* at 1374-75.

5. Here, Plaintiff is arguing that one of these "unique circumstances" is at play. It is seeking the communications at issue because in addition to providing opinions of counsel, Mr. Bookoff additionally gave at least some "litigation strategy" advice to HP Hood during this case, particularly as to the issue of claim construction. (D.I. 581 at 2; Tr. at 17) Plaintiff's argument is that, in doing so, Mr. Bookoff "sufficiently blurred the lines between opinion counsel and trial counsel[,]" at least as to claim construction-related issues. (D.I. 581 at 3) In turn, Plaintiff argues that it should be entitled to review trial counsel's communications with HP Hood as to claim construction-related subject matter, in order to determine whether, for example, trial counsel has privately suggested that HP Hood take a position on claim construction that differs from what is set out in the opinions of counsel. (*Id*.; Tr. at 14)

6. To determine whether the scope of waiver of attorney-client privilege should be extended in this way, the Court will first examine what we know about Mr. Bookoff's role as to this patent infringement matter. In 2010,[7] Plaintiff began the litigation by suing Defendant Shibuya Hoppmann Corp.; sometime thereafter, HP Hood (Shibuya Hoppmann Corp.'s customer) engaged Mr. Bookoff to provide an opinion of counsel as to claim construction, non-

---

sufficient record to indicate that there are in fact unproduced responsive documents in HP Hood's custody or control relating to either of these two categories.

[6] With regard to the privilege issues discussed herein, the Court applies the law of the Federal Circuit. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

[7] This case was originally filed in September 2010 in the United States District Court for the Western District of New York. (D.I. 1) It was transferred to this Court in November 2019. (D.I. 481)

infringement and invalidity. (D.I. 582 at 1) Plaintiff also sued HP Hood for patent infringement in 2012, (*id.*),[8] and it is undisputed that in addition to his role as opinion counsel, Mr. Bookoff also served as HP Hood's original trial counsel in that case up through April 2013, (D.I. 589 at ¶ 3). In April 2013, Defendant Shibuya Kogyo Co., Ltd. took over responsibility for HP Hood's defense and selected Sterne, Kessler (who was already representing Shibuya Kogyo Co., Ltd. and Shibuya Hoppmann Corp.) to serve as HP Hood's trial counsel going forward. (*Id.*; D.I. 590 at ¶¶ 1-2, 5; Tr. at 36-37) There is some evidence that after Mr. Bookoff gave way to Sterne, Kessler as HP Hood's trial counsel in April 2013, he played a role beyond the offering of his opinions of counsel. For example, in a December 2020 deposition, Mr. Bookoff appeared to indicate that "at times" or "[e]very so often" or "[i]nfrequently" over the last many years, he provided HP Hood with input on "litigation strategy" relating to "issues like noninfringement, invalidity [and] claim construction[.]" (D.I. 581, ex. 8 at 70, 101-02, 115, 123-24, 129-30, 133) Additionally, Plaintiff produced an e-mail string from July 2016 (the "July 2016 e-mail string") in which: (1) Sterne, Kessler attaches and sends to HP Hood's Senior Vice President and General Counsel Paul Nightingale a set of proposed claim terms for construction in this case (and does not copy Mr. Bookoff); (2) Mr. Bookoff later responds to that e-mail (noting that Mr. Nightingale had forwarded the e-mail to him) by attaching "minor comments and suggestions" about the claim terms; (3) Sterne, Kessler engages in further follow-up with Mr. Bookoff, asking him a question about the "angle" he was going for with regard to one of his suggestions, and otherwise telling Mr. Bookoff that they will "make the[] changes" that Mr. Bookoff suggested; and (4) Mr. Bookoff responded, explaining why he had made that particular suggestion. (D.I. 581, ex. 10; *see* Tr. at 14-15) Lastly, during the teleconference regarding the instant Motion, Defendants' trial counsel confirmed that HP Hood "occasionally passed [] information [provided by trial counsel] along to Mr. Bookoff, who, on a couple of occasions has had comments[.]" (Tr. at 28; *see also* D.I. 589 at ¶ 4 (Mr. Nightingale noting that after 2013, he "from time to time ask[ed] Mr. Bookoff whether developments in the litigation or in the patent office proceedings on the patents in suit affected his view of HP Hood's potential exposure to patent infringement liability"))

7. Therefore, the above evidence shows that in certain instances, Mr. Bookoff has provided input on litigation strategy (including, in at least one instance, input on the claim construction process) to HP Hood and its trial counsel since April 2013. In these situations, Mr. Bookoff went beyond the role of opinion counsel (i.e., "provid[ing] an objective assessment for making informed business decisions") and traversed into territory normally occupied by trial

---

[8] Plaintiff's case against HP Hood was later consolidated with its case against Shibuya Hoppmann Corp. and its later-added co-Defendant, Shibuya Kogyo Co., Ltd. (D.I. 182; D.I. 183)

counsel (i.e., "focus[ing] on litigation strategy and evaluat[ing] the most successful manner of presenting a case to a judicial decision maker"). *Seagate*, 497 F.3d at 1373.[9]

8. That said, all of the available evidence, cited above, indicates that Mr. Bookoff's role with regard to litigation strategy has been fairly limited—especially taking into account the overall arc of this litigation. Mr. Bookoff served as HP Hood's lead trial counsel for only a short period of time, and he has not played that role for over eight years. During that over-eight-year period, Mr. Bookoff's input on trial strategy (as is noted above in paragraph 6) has been varyingly described as occurring "at times" or "infrequently" or "occasionally" or "from time to time." J.C. Rozendaal, a Sterne, Kessler Director who has served as lead trial counsel for HP Hood since April 2013 (and as lead trial counsel for the other two Defendants since September 2010), states that other than with regard to the July 2016 e-mail string, he does "not recall receiving input from Mr. Bookoff on draft pleadings or arguments in the litigation" nor does he "recall discussing litigation strategy with Mr. Bookoff." (D.I. 590 at ¶ 9; *see also id.* at ¶¶ 1-2; Tr. at 37) Moreover, Mr. Nightingale states that other than what is represented in the July 2016 e-mail string, he does not recall "ever having sent any other draft pleadings from the case to Mr. Bookoff." (D.I. 589 at ¶ 8) Thus, on the record before the Court, this does not appear to be a case where Mr. Bookoff, while serving as opinion counsel: (1) also embedded himself with HP Hood's trial team and/or (2) consistently and repeatedly blurred the line between objective opinion giver and trial strategist.

---

[9] The Court agrees with Defendants that attorney-client privilege regarding communications with trial counsel should not *automatically* be waived simply because (as was the case here) a client briefly had opinion counsel work as trial counsel, but then later switched to a different firm to serve as trial counsel. (Tr. at 33); *see also Alloc, Inc. v. Pergo, L.L.C.*, No. 00-C-0999, 2010 WL 3808977, at *7 (E.D. Wis. Sept. 23, 2010) ("[C]ourts have noted that it is prudent litigation strategy—not chicanery—to retain trial counsel separate from opinion counsel. . . . Our adversarial system would be undermined if waiver were extended to all trial counsel any time a defendant briefly retained its opinion counsel as trial counsel before realizing the strategic disadvantage of that decision and changing course."). Separately, to the extent that Defendants suggest that waiver *could never be* the result here due to the fact that Mr. Bookoff is not employed by the same firm (i.e., Sterne, Kessler) that is lead trial counsel for HP Hood, (D.I. 582 at 2), the Court disagrees. The *Seagate* Court was careful to note that it was not setting down "absolute rule[s,]" and that the particular facts and circumstances of a given case would be important in determining whether attorney-client privilege had been waived as to communications with trial counsel. *Seagate*, 497 F.3d at 1374-75. In light of this, the Court's decision here should not be based on any "absolute rule" (i.e., "if opinion counsel ever serves as trial counsel, there must be a waiver" or "if opinion counsel does not work for the same firm as trial counsel, there can never be a waiver").

5

9. Moreover, Plaintiff has acknowledged that if a broader waiver applies here, it would only apply to trial counsel's communications that actually bear on the subject matter discussed in Mr. Bookoff's opinions of counsel. (Tr. at 18) Yet in the one document of record the Court has in which Mr. Bookoff provides advice on litigation strategy—the July 2016 e-mail string—Mr. Bookoff does not seem to be discussing material that relates to his opinions of counsel. Defendants have produced the attachment to Mr. Bookoff's July 13, 2016 e-mail, in which Mr. Bookoff proposed edits to a draft of proposed claim terms for construction. That attachment shows that in addition to correcting a few typographical errors and making three marginal comments, Mr. Bookoff suggested that three claim terms be added to the list of terms to be construed: (i) "means for providing a plurality of containers in a sterilization tunnel" in United States Patent No. 6,475,435 (the "'435 patent"); (ii) "atomized sterilant" in United States Patent No. 6,702,985 (the "'985 patent"); and (iii) "a mechanism for applying the atomized sterilant and the second supply source of hot sterile air on the container" in the '985 patent. (D.I. 590 at ¶ 6; *id.*, ex. C at BK-0002782-86) However, none of these three suggested additions to the list of claim terms appear to relate directly to the subject matter of Mr. Bookoff's opinions of counsel. (D.I. 590 at ¶ 7) For example, as to the '435 patent, in articulating why HP Hood did not infringe the patent, Mr. Bookoff's opinions of counsel focused only on claim construction of the term "wherein the sterilant concentration levels of the plurality of sterilant concentration zones are maintained at a ratio of at least about 5 to 1" (or variations on that term)—not on the term "means for providing a plurality of containers in a sterilized tunnel." (*Id.*, ex. A-1 at BK-0000464-69; *id.*, ex. B at BK-0001989-94) And with regard to the '985 patent, in his opinions of counsel, Mr. Bookoff did not rely on a construction or definition of "atomized sterilant" or "a mechanism for applying the atomized sterilant and the second supply source of hot sterile air on the container" to suggest that HP Hood did not infringe the patent. (D.I. 590 at ¶ 8; *id*. ex. A-1 at BK-0000469-72; *id.*, ex. B at BK-0001994-97)

10. As noted above, the Federal Circuit has stated that in order for a privilege waiver as to the subject matter of opinions of counsel to extend to communications with trial counsel, the circumstances would need to be "unique" and amount to something like "a party or counsel engag[ing] in chicanery." *Seagate*, 497 F.3d at 1374-75; *see also Trading Techs., Int'l, Inc. v. CQG, Inc.*, Case No. 05 C 4811, 2014 WL 1977029, at *8 (N.D. Ill. May 9, 2014). Here, we simply do not have that kind of record. And because the record does not suggest that Mr. Bookoff had an outsized role as a litigation strategist in this case, nor that any assistance he provided in that regard relates to the scope of his opinions of counsel, the Court will DENY Plaintiff's request for additional discovery as to communications between HP Hood and Sterne, Kessler regarding claim construction. *Cf. Alloc, Inc. v. Pergo, L.L.C.*, No. 00-C-0999, 2010 WL 3808977, at *1, *6-7 (E.D. Wis. Sept. 23, 2010) (declining to extend waiver of attorney-client privilege regarding opinions of

counsel to certain communications between the defendant and trial counsel, because even though opinion counsel had served as trial counsel for a time, it and the defendant's current trial counsel had never concurrently represented the defendant, and opinion counsel had not served as trial counsel in the case for years by the time the communications at issue were made); *Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, Civil Action No. 2:07-CV-262 (TJW), 2010 WL 2079920, at *1, *3 (E.D. Tex. May 24, 2010) (concluding that waiver of attorney client privilege regarding an opinion provided by opinion counsel extended to communications with trial counsel, but where opinion counsel belonged to the same firm as trial counsel, where opinion counsel joined the trial team shortly after he authored the opinion of counsel and never left that trial team, and where opinion counsel "participat[ed] actively with developing the non-infringement and invalidity defenses" that the defendant was to use at trial).

11. As to the second and final dispute, it is over whether HP Hood should produce *solely internal* communications relating to the subject matter of the opinions of counsel (such as communications between HP Hood's in-house counsel and its management regarding claim construction, non-infringement and invalidity issues that are covered in the opinions of counsel). (D.I. 581 at 3; Tr. at 19-20, 25)[10]

12. In *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), the Federal Circuit ruled that a party may not (1) obtain opinions of counsel from two separate sets of attorneys as to particular subject matter, (2) assert that it relied on one of those two opinions but not the other and (3) then withhold communications as to the other opinion by claiming attorney-client privilege. 448 F.3d at 1297, 1299. In *EchoStar*, the accused infringer relied on an opinion of in-house counsel to rebut a charge of willful infringement; the Federal Circuit concluded that the accused infringer thus had not only waived the privilege as to communications with in-house counsel on that subject matter, but also as to its communications with outside counsel on that same topic, because outside counsel had provided the accused infringer with an opinion on that topic (even though the accused infringer did not actually rely on outside counsel's opinion in the litigation). *Id.* at 1297, 1299. In so doing, the *EchoStar* Court stated that "[i]n such a case [i.e., a case where a party attempts to use the attorney-client privilege in this manner as both a sword and a shield], . . . [t]o prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.* at 1301. Plaintiff points to this language from *EchoStar*, asserting that it compels its requested relief here. (D.I. 581 at 3)

---

[10] The Court understands that HP Hood has already provided Plaintiff with documents, including those generated by in-house counsel/employees, that were provided to opinion counsel or that memorialize any communications with opinion counsel. (D.I. 582 at 3)

7

13. The Court disagrees. In its view, although some courts have interpreted the meaning of the *EchoStar* opinion more broadly,[11] "the holding in *EchoStar* [should be] confined to its facts—that is, the advice of counsel defense waives attorney-privilege between the client *and any attorney who provided an opinion of counsel* regarding the infringement, validity or enforceability of the patent-in-suit." *Putnam v. Henkel Consumer Adhesives, Inc.*, CIVIL ACTION FILE NO. 1:05-CV-2011-BBM, 2006 WL 8432551, at *5 (N.D. Ga. Sept. 5, 2006) (emphasis added). In *EchoStar*, both sets of counsel at issue played an explicit opinion-giving role as to certain subject matter, and the accused infringer wished to rely on one of those opinions as to a liability issue in the case. In light of that, the accused infringer could be seen to have been "impermissibly using attorney-client privilege as both a sword and a shield, by attempting to selectively waive privilege depending on the favorability of the advice." *Id*. at *4. In contrast, here HP Hood did not attempt this sword and shield approach. It did not turn its in-house counsel into an opinion provider on the same topic that Mr. Bookoff weighed in on. Indeed, the record indicates that HP Hood's in-house counsel did not conduct its own infringement, invalidity or claim construction analysis of the issues in this case. (D.I. 582 at 3; D.I. 589 at ¶ 8) Ultimately, HP Hood obtained and relied on only one set of opinions from one source—Mr. Bookoff—in order to assure itself that it was not knowingly or willfully infringing a valid patent. Under these circumstances, and in light of the guidance provided by the Federal Circuit *EchoStar* and later in *Seagate*, the Court does not read *EchoStar* as requiring a waiver of attorney-client privilege as to HP Hood's internal communications regarding Mr. Bookoff's opinions of counsel. It will thus also DENY Plaintiff's Motion in that regard. *Cf. Putnam*, 2006 WL 8432551, at *4-5 (interpreting *EchoStar* not to require waiver of the attorney-client privilege as to communications between the defendant and its trial counsel, where the defendant did not rely on opinions of trial counsel as to infringement, validity or enforceability of the patent-in-suit, and instead ordering that privilege was waived only as to communications between the defendant and the counsel from whom defendant "received patent opinions[,]" because nothing in *EchoStar* "indicates a desire by the Court of Appeals to have every communication a client has with its [non-opinion counsel] on the very subject of an infringement trial open to review by opposing counsel") (internal quotation marks and citation omitted); *see also Ampex Corp. v. Eastman Kodak Co.*, No. CIV A. 04-1373-KAJ, 2006 WL 1995140, at *3-4 (D. Del. July 17, 2006) (interpreting *EchoStar* similarly).

For all of the above reasons, the Court DENIES Plaintiff's request for production of the communications at issue.

---

[11] *See, e.g., Krausz Indus. Ltd. v. Smith-Blair, Inc.*, No. 5:12-CV-00570-FL, 2016 WL 10538004, at *2 (E.D.N.C. Dec. 13, 2016).

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the document. Any such redacted version shall be submitted by no later than **June 24, 2021** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: June 21, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE