# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEUBEN FOODS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 1:19-cv-02181-CFC-CJB ) |
| SHIBUYA HOPPMANN CORP., SHIBUYA KOGYO CO., LTD., and HP HOOD LLC, | ) ) **REDACTED** ) ) |
| Defendants. | ) **Redacted Version** ) **filed June 28, 2021** ) |

## PLAINTIFF STEUBEN FOODS, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 4

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

  A.  Defendants fall well short of carrying their burden at summary judgment. ....2

    1.   Defendants' motion is self-defeating. .......................................................2

    2. Defendants' argument that the claims are invalid for failure to recite an express upper limit is legally incorrect. ..........................................................5

    3. If Defendants are permitted to proceed, genuine issues of material fact remain to be tried. ...................................................................................8

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andersen Corp. v. Fiber Composites, LLC*,
   474 F.3d 1361 (Fed. Cir. 2007) ........................................................................5, 9

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) .........................................................10

*Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan v. Goodspeed*,
   377 F. Supp. 3d 471 (E.D. Pa. 2019) ...................................................................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................5

*Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*,
   456 F. Supp. 3d 594 (D. Del. 2020) .....................................................................5

*Falko-Gunter Falkner v. Inglis*,
   448 F.3d 1357 (Fed. Cir. 2006) .........................................................................11

*Gen. Electric Co. v. Sonosite, Inc.*,
   641 F. Supp. 2d 793 (W.D. Wisc. 2009) .............................................................6

*MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*,
   687 F.3d 1377 (Fed. Cir. 2012) ......................................................................7, 8

*Ex parte Mayer*,
   Appeal No. 2019-003492, 2020 WL 1041294 (P.T.A.B. Feb. 28, 2020) .................................................................................................................1

*Milwaukee Electric Tool Corp. v. Snap-On Inc.*,
   271 F.Supp.3d 990 (E.D. Wisc. 2017) .................................................................6

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
   772 F.2d 1570 (Fed. Cir. 1985) ...........................................................................5

*Steuben Foods, Inc. v. Oystar USA, Inc.*,
   Civ. No. 1:10-cv-780, 2021 WL 630906 (W.D.N.Y. Feb. 18, 2021) ...................7

**Statutes**

35 U.S.C. § 112 ¶1 ........................................................................................... 1, 4

Steuben Foods, Inc. respectfully opposes Defendants' Motion for Summary Judgment No. 4.

## INTRODUCTION

Defendants' motion is self-defeating. To set up their invalidity argument under 35 U.S.C. § 112 ¶1, Defendants argue (at 1-2) that Steuben "claim[ed] an essentially unbounded range" with "unlimited throughput" (*i.e.*, infinite throughput) while at the same time admitting (at 3) as a material undisputed fact that the "speed of the patented bottling apparatus has some practical upper limit." The latter ***fact*** dooms the former ***argument***.

As to the former argument, during the *Markman* hearing the Court referred to the premise of Defendants' argument as "silly," noting that "there's no way in my mind that the Patent Office thought that somehow this invention had to at some point accomplish the disinfecting of an infinite number of bottles."[1] Ex. 56 at 84:17-18, 86:5-10. The Court was correct; the claim does not cover an infinite throughput. Defendants' expert, Dr. Glancey, admitted that a POSITA would not understand the claims to claim an infinite throughput because a ▮REDACTED▮

▮▮▮" Ex. 57 at 157:13-16.

---

[1] Consistent with the Court's view, the PTO has repeatedly rejected such arguments against open-ended claim limitations. *See, e.g.*, *Ex parte Mayer,* Appeal No. 2019-003492, 2020 WL 1041294, at *4 (P.T.A.B. Feb. 28, 2020).

As to the latter fact, Glancey testified: "REDACTED." *Id.,* 170:8-171:10 (emphasis added). Steuben's expert agrees, leaving no dispute over the fact that there is an upper limit at or near the throughput of existing machines. Defendants' failure to adduce any evidence from a POSITA on whether the patents describe and enable the agreed upon range is fatal to their ability to carry their burden of invalidity by clear and convincing evidence.

If summary judgment is appropriate at all, it is in Steuben's favor.[2]

## ARGUMENT

**A. Defendants fall well short of carrying their burden at summary judgment.**

**1. Defendants' motion is self-defeating.**

In an attempt to carry their invalidity burden, Defendants rely on Glancey's report, which was premised on his assertion that "REDACTED" Ex. 58, ¶1152 (emphases added). Likewise, Defendants

---

[2] Defendants' motion fails to comply with the Scheduling Order because Defendants' motion "No. 4" is four separate summary judgment motions seeking distinct relief packaged as one: *two different grounds* of invalidity against *two different patents* with different claim limitations. Dkt. 512, ¶18(b).

2

argue (at 7) that the claims are invalid because the patents do not enable "an aseptic bottling machine with an *unlimited* throughput."

Defendants' motion fails at the outset because Glancey disavowed his "infinity" opinion during his deposition:



Ex. 57 at 157:9-16 (emphases added). Sharon agrees. Ex. 59, ¶¶513-16.

Glancey then acknowledged that a POSITA would indeed understand that aseptic bottling machines have an inherent upper limit:



Ex. 57 at 170:8-171:10 (emphases added). Sharon agrees. *See* Ex. 59, ¶521.

Perhaps because of Glancey's disavowal, Defendants present as undisputed fact that "[t]he speed of the patented bottling apparatus has some practical upper

3

limit . . . ." Dkt. 632, ¶7. Steuben does not dispute this, and the experts agree that this range is between 1,000-2,000 bottles per minute. RSF, ¶¶11-13. Defendants' argument (*e.g.*, at 1, 7) that the patents are invalid for failing to enable and describe an "unlimited"/"unbounded" range cannot be squared with their admission that the patented bottling apparatus has a practical upper limit, and Defendants' motion fails.

In fact, the record evidence warrants summary judgment in favor of Steuben. "Once a party seeks resolution of a question by moving for summary judgment on that question, the court may grant summary judgment against the movant even in the absence of a cross-motion for summary judgment." *Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan v. Goodspeed*, 377 F. Supp. 3d 471, 475–76 (E.D. Pa. 2019). Glancey's report did not address enablement or description of the agreed-upon practical upper limit range. Instead, based on his understanding that "[REDACTED]" Glancey opines that the claims do not meet the requirements of §112, ¶1. *See, e.g.*, Ex. 58, ¶¶1143, 1145, 1147, 1149, 1152 (emphasis added). But Glancey never addresses the agreed-upon range.

The closest Glancey comes is in a single conclusory assertion that [REDACTED].[3] *Id.*, ¶¶1145, 1149. Glancey offers no analysis, opting instead to attack his "infinity"

---

[3] Glancey's reply report offers the same conclusory view, citing back to his conclusory Opening Report. Ex. 76, ¶354 (citing Ex. 58, ¶¶1144-45).

straw man. Conclusory expert testimony is insufficient to carry Defendants' burden. *Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*, 456 F. Supp. 3d 594, 617–18 (D. Del. 2020). Given Defendants' dearth of evidence on an issue where they carry such a heavy burden, summary judgment is warranted in Steuben's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### 2. Defendants' argument that the claims are invalid for failure to recite an express upper limit is legally incorrect.

Notwithstanding Glancey's disavowal of Defendants' argument, Defendants assert that because the claims do not recite an express upper limit, the patents must describe and enable an "unbounded claimed range." Defendants' argument is contrary to settled law: "[o]pen-ended claims are not inherently improper." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1376 (Fed. Cir. 2007) (quotation omitted). "[A]s for all claims, their appropriateness depends on the particular facts of the invention, the disclosure, and the prior art." *Id*. (quotation omitted). A claim without an express upper limit is permissible if "there is an inherent, albeit not precisely known, upper limit and the specification enables one of skill in the art to approach that limit." *Id.* at 1376-77 (internal quotation omitted). Similarly, with respect to the written description requirement, "open-ended claims, [] would be limited by what a person skilled in the art would understand to be workable." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1576-77 (Fed. Cir. 1985).

5

Defendants make much of the fact that Steuben did not ask the Court to read in an upper limit as part of claim construction. But the question there was whether there was a reason in the intrinsic evidence to construe the claim at all. Steuben's position was—and is—that there is not. Steuben did not change positions as Defendants allege. Whether the patents must describe or enable a claim of unlimited scope is a validity question that takes into consideration the practical upper limit of the open-ended range as understood by a POSITA based on the evidence adduced during discovery. Like Glancey, Defendants now admit that a POSITA would understand that there is such a practical upper limit, and the argument that the patents fail to enable or describe an unlimited/infinite range must fail. *See Milwaukee Electric Tool Corp. v. Snap-On Inc.,* 271 F.Supp.3d 990, 1038 (E.D. Wisc. 2017). ("[W]hatever the actual upper limit may be, this claim has not been construed to expressly cover up to an infinite discharge current. [. . .] Snap-On's argument fails because it tries to set up an impossible goal which in reality is not claimed."); *Gen. Electric Co. v. Sonosite, Inc.*, 641 F. Supp. 2d 793, 817-18 (W.D. Wisc. 2009).

The WDNY construction relied on by Defendants—which is not binding on this Court and did not address the '591 patent—does not weigh in favor of a different result. The District Judge modified the Magistrate Judge's construction, removing the "infinite range," while noting that the Magistrate Judge "correctly articulated that there is no mathematically ascertainable upper limit ***inherent in the claim***

6

*language*." *Steuben Foods, Inc. v. Oystar USA, Inc.*, Civ. No. 1:10-cv-780, 2021 WL 630906, at *10 (W.D.N.Y. Feb. 18, 2021). Steuben agrees that the claim language recites no express upper limit, but that does not mean that the claim must enable or describe an infinite scope.[4] Otherwise, open-ended ranges would be inherently improper, directly contradicting Federal Circuit precedent.

Despite Glancey's disavowal of his opinion, and binding precedent, Defendants assert (at 7) that "Taggart himself admitted" that the specifications would not enable an unlimited throughput. But the patents need not enable an infinite throughput, so the fact that Mr. Taggart did not see how it would be possible to design a filler with infinite output is of no moment.

Defendants also allege (at 8) that *MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*, 687 F.3d 1377 (Fed. Cir. 2012) is "instructive." *MagSil* dealt with semiconductors in the field data storage, which had advanced exponentially between the mid-1990s (filing) and late-00s (litigation). The claim term at issue required a "change in the resistance of at least 10% at room temperature." *Id*. at

---

[4]Defendants refer to (at 6-7) Steuben's argument that "[t]he fact that the claims do not recite an express upper limit does not mean that their scope cannot be determined with reasonable certainty," noting that "if the disinfecting or filling process operates at rates greater than 100/350 bottles per minute, it is within the scope of the patent." That does not mean that a POSITA would not understand the open-ended range to have a practical upper limit that would bound the POSITA's description and enablement expectation.

1381. It was undisputed that the patent did not enable even 20% change in resistance. *Id*. at 1382.

Yet, the accused technology achieved a change in resistance of more than 600%. *MagSil* turned on the fact that at the time of patent filing the accused range was not even envisioned by those in the art. *Id*. at 1384. Instead, the accused change in resistance was possible only through transformative changes in data storage technology. *Id*. There may have been an inherent upper limit on data storage systems, but the specification did not even come close to enabling a POSITA to practice the invention within the range of that potential upper limit. *Id*.

The situation here, involving industrial aseptic bottling machinery, is entirely different. Even today, more than 20 years after patent filing, bottling speeds are in the range of 1,000 bottles per minute. Steuben has submitted unrebutted testimony from Sharon that such speeds were described and enabled by the patents at filing. Ex. 59, ¶¶512-548; Ex. 60 at 170:25-172:1, 176:1-190:1. Unlike in *MagSil*, there were no advances needed to facilitate present day bottling speeds. Defendants' reliance on *MagSil* does not save their argument.

> **3.  If Defendants are permitted to proceed, genuine issues of material fact remain to be tried.**

Defendants' argument in Glancey's expert report and in their motion is that the claims recite an "unlimited" and "infinite" throughput. Glancey disavowed that position, acknowledged that there is a practical upper limit, and failed to provide any

8

analysis of enablement or description within the range of that upper limit. As such, Defendants cannot carry their burden by clear and convincing evidence at trial or on their Motion. However, if Defendants are allowed to proceed—at the very least—questions of fact remain to be resolved on enablement and written description. RSF, ¶¶15-19.

Consistent with Glancey's opinion that the practical upper limit is at or near bottling speeds achieved in the industry, Sharon testified that the practical upper limit would be in the range of 1,000-2,000 bottles per minute. Ex. 60 at 170:23-171:4. Contrary to Defendants' argument (at 3), Sharon did not "walk back" that testimony. Sharon explained that it was his " REDACTED " *Id.* at 178:15-179:3 (emphasis added). Sharon is correct because the law recognizes that an open-ended range would be understood to include "an inherent, ***albeit not precisely known***, upper limit." *Andersen*, 474 F.3d at 1376-77 (emphasis added). Defendants' attempt to foist a precise number on the upper end of the range fails.

With the experts in agreement on the practical upper limit, the questions that could be tried if Defendants' §112 defenses proceed are whether the specification (a) describes and (b) enables a POSITA to practice within that practical upper range.

9

Defendants dispute Sharon's opinion that a POSITA would understand the patents to enable and describe a throughput in range of 1,000-2,000, including in ways consistent with the opinions expressed by Defendants' other expert Mr. Bresnahan. Ex. 59, ¶¶524-30; Ex. 61, ¶159; Ex. 62 at 81:21-82:19; Ex. 60 at 180:10-181:18. To the extent Defendants are permitted to raise a disagreement on this issue without any supporting evidence, it should be resolved by the jury.

Defendants also argue (at 8) that summary judgment is appropriate because "Steuben drafted these claims broadly to cover an aseptic filler with an arbitrarily high throughput." Whatever Defendants mean by "arbitrarily high throughput," Steuben disputes this. RSF ¶6. Moreover, Defendants do not address Sharon's testimony explaining that REDACTED Ex. 59, ¶¶533, 541. If the claim covers "arbitrarily high throughput" the preferred embodiment can be "arbitrarily" duplicated to meet it. To the extent Defendants can dispute this, it is an issue for the jury. RSF ¶¶18-19.

As to written description, Defendants argue (at 10) that Taggart did not have possession of the claimed invention because "he never built a working embodiment at all." But the Federal Circuit has "made clear that the written description requirement does not demand either examples or an actual reduction to practice." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en

banc). The fact that Taggart ran bench top experiments as opposed to building a full working system is not dispositive of written description. Ex. SS at 100:9-24. Neither is whether the specification discloses one preferred embodiment. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006).

## CONCLUSION

Steuben respectfully requests that the Court deny Defendants' motion.

DATED: June 21, 2021

/s/ *Timothy Devlin*
Timothy Devlin (No. 4241)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
tdevlin@devlinlawfirm.com

W. Cook Alciati
GARDELLA GRACE P.A.
80 M Street SE, 1st Floor
Washington, DC 20003
(703) 556-9600
calciati@gardellagrace.com
*Attorneys for Steuben Foods, Inc.*

11

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Scheduling Order, I hereby confirm that this brief complies with the type, font and word limitations set forth in the Standing Order. I certify that this document contains 2,523 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, table of contents and authorities, or the counsel blocks font. The total number of words in all of Plaintiffs' case-dispositive and *Daubert* answering briefs is less than 12,500 words, calculated in the above manner.

DATED: June 21, 2021

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
(302) 449-9010
tdevlin@devlinlawfirm.com

W. Cook Alciati
GARDELLA GRACE P.A.
80 M Street SE, 1st Floor
Washington, DC 20003
(703) 556-9600
calciati@gardellagrace.com
*Attorneys for Steuben Foods, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing document to be served on June 21, 2021, upon the following in the manner indicated:

**BY E-MAIL:**

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com

J.C. Rozendaal
Byron L. Pickard
Michael E. Joffre
Deirdre M. Wells
William H. Milliken
Jean Paul Y. Nagashima
Anna G. Phillips
Robert E. Niemeier
STERNE, KESSLER, GOLDSTEIN
   & FOX, P.L.L.C.
1100 New York Ave. NW, Suite 600
Washington, DC 20005
(202) 371-2600
jcrozendaal@sternekessler.com
bpickard@sternekessler.com
mjoffre@sternekessler.com
dwells@sternekessler.com
wmilliken@sternekessler.com
ynagashima@sternekessler.com
aphillips@sternekessler.com
rniemeier@sternekessler.com
Steuben-ShibuyaSKGF@sternekessler.com

*/s/ Timothy Devlin*
Timothy Devlin