IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEUBEN FOODS, INC.,              )
                                  )
           Plaintiff,             )
                                  )
     v.                           )     Civ. No. 19-2181-CFC-CJB
                                  )
SHIBUYA HOPPMANN                  )
CORPORATION et al.,               )
                                  )
           Defendants.            )

## MEMORANDUM ORDER

Steuben has accused Defendants' P7 aseptic bottling line of infringing claim

26 of U.S. Patent No. 6,209,591 (the #591 patent).  Pending before me is Steuben's

motion for summary judgment of infringement.  D.I. 614.

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those "that could affect

the outcome" of the proceeding.  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011).  "[A] dispute about a material fact is genuine if the evidence is sufficient to

permit a reasonable jury to return a verdict for the non-moving party."  *Id*. (internal

quotation marks omitted).  A non-moving party asserting that a fact is genuinely

disputed must support such an assertion by: "(A) citing to particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).  The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  *Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 460–61 (3d Cir. 1989).

Defendants argue that I should deny Steuben's motion for two reasons: first, because the P7 does not meet the so-called "second sterile region" limitation of the asserted claim; and second, because Defendants' "reverse doctrine of equivalents" defense raises disputed factual issues.

The second sterile region limitation reads: "a second sterile region positioned proximate [to] said first sterile region."  At the *Markman* hearing, I agreed with Steuben that construction of this limitation was not necessary and thus the term should be given its plain and ordinary meaning.  In making that determination, I rejected Defendants' proposal to construe the term as "a sterile area through which food does not flow."  I also rejected Defendants' argument made in support of that proposal that "[a] POSA would understand the second sterile region to be free of food products because the second region is continuously

sterilized to counteract the contaminants that are regularly entering the region—and both the continuous sterilization and the introduction of contaminants are inconsistent with food flow." *See* D.I. 526 at 85–86.

I explained my decision as follows during the hearing:

> I'm going to go and interpret the phrase according to its plain meaning. The claims, the written description[,] and prosecution do not specifically define or limit the meaning of the term a second sterile region positioned proximate to said first sterile region.
>
> . . . [T]he defendants assert that I should limit the term to a sterile area through which food does not flow, but they have not pointed to any clear lexicography or disclaimer in the patent that will require that construction.
>
> Defendants' only argument for this construction is that food cannot flow in the second sterile region because the second region is continuously contaminated and continuously sterilized. Continuous contamination [and] sterilization is inconsistent with food flow. That argument, however, is based only on the deduction that continuous sterilization and introduction of contaminants is inconsistent with food flow. It's not based on a clear disclaimer of claim scope or lexicography.
>
> Also, the second sterile area in claim 26, which contains the disputed term at issue here, is not continuously sterilized as defendants argue. Claim[s] 1 and 16 of the [#]591 patent recite a continuously sterilized second sterile region whereas claim 26 recites only a second sterile region. Under the doctrine of claim differentiation, therefore, the second sterile region in claim 26 is not continuously sterilized.

3

Tr. at 88–89.

Steuben says that a specified area of the P7's product pipe constitutes a second sterile region.  D.I. 616 at 7.  Steuben argues that this area is sterile and proximate to the P7's first sterile region and that "[n]othing more is required to meet [the second sterile region] limitation."  D.I. 616 at 7.

Defendants do not dispute that the specified area of the product pipe is both sterile and proximate to the P7's first sterile region.  But their expert opines that the P7's product pipe cannot constitute the second sterile region because (1) the patent's written description "explicitly states" that a "prior-art design" with a product pipe configured like the P7's does not have a second sterile region, D.I. 641, Ex. 21 at 52; D.I. 672 at 11–12; and (2) a product pipe "cannot be continuously sterilized," D.I. 641, Ex. 21 at 53; D.I. 672 at 11–12.

The problem with these opinions is that they go to the legal question of claim construction, not the fact issue of literal infringement.  Defendants deny that they are engaging in claim construction, but their own words betray that denial. Indeed, they say that their expert's "key point" is that "Steuben cannot properly interpret the claim to encompass the prior-art design that the [patent's] specification *expressly states is unclaimed*."  D.I. 672 at 12 (emphasis in original). "[I]nterpret[ing] the claim" is claim construction; so, too, is determining what the

4

specification expressly claims and does not claim.  Steuben is not interpreting the claim; Defendants are.  Steuben is simply comparing the P7 with the structure recited in claim 26; Defendants are trying to rewrite the claim.  Because the P7's product pipe constitutes "a second sterile region positioned proximate [to] said first sterile region," the P7 meets the second sterile region limitation and therefore literally infringes claim 26.

That does not, however, end the matter, because Defendants have asserted the doctrine of equivalents.  D.I. 672 at 2.  The doctrine is typically invoked by patentees to support a finding of infringement, but parties accused of infringement can also avail themselves of this equitable principle.

Both parties refer to the doctrine in their briefing as the "reverse doctrine of equivalents" because it is Defendants who have invoked the doctrine.  The Supreme Court, however, has never adopted that term.  On the contrary, the Supreme Court made clear in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950), that the doctrine of equivalents applies equally to plaintiffs and defendants in a patent infringement case.  In the Supreme Court's words:

> The essence of the doctrine is that one may not practice a
> fraud on a patent.  Originating almost a century ago in
> the case of *Winans v. Denmead*, 15 How. 330, 14 L.Ed.
> 717, it has been consistently applied by this Court and the

lower federal courts, and continues today ready and available for utilization when the proper circumstances for its application arise. 'To temper unsparing logic and prevent an infringer from stealing the benefit of the invention' a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147. The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' *Union Paper-Bag Machine Co. v. Murphy*, 97 U.S. 120, 125, 24 L.Ed. 935. *The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results*, *Imhaeuser v. Buerk*, 101 U.S. 647, 655, 25 L.Ed. 945, although the area of equivalence may vary under the circumstances. *See Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 414–415, 28 S.Ct. 748, 749, 52 L.Ed. 1122, and cases cited; *Seymour v. Osborne*, 11 Wall. 516, 556, 20 L.Ed. 33; *Gould v. Rees*, 15 Wall. 187, 192, 21 L.Ed. 39. *The wholesome realism of this doctrine is not always applied in favor of a patentee but is sometimes used against him. Thus, where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement*.

*Id*. at 608–09 (emphasis added) (footnote omitted). Because the doctrine of

equivalents applies equally to the patentee and the accused infringer, "reverse

doctrine of equivalents" is really a misnomer.  But for ease of reference, I will follow the parties' lead and use the term here.

The Federal Circuit held in *SRI International v. Matsushita Electrical Corp. of America*, 775 F.2d 1107, 1124 (Fed. Cir. 1985), that "the reverse doctrine of equivalents . . . raises a fact question, determinable on inquiry into whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way."  Defendants' expert has opined that "the P7 line does not use the principle of creating a sterilized second sterile zone that cleans the valve stem patented as an invention in the [#]591 patent" and that this "difference in the principle of operation between the alleged invention of the [#]591 patent and the [P7 line] is substantially different."  D.I. 641, Ex. 21 ¶ 136.  This expert opinion creates a genuine dispute of material fact about whether the P7 performs the same function as the claimed invention in a substantially different way.

Steuben offers two counterarguments to Defendants' invocation of the reverse doctrine of equivalents.  It points first to a statement by the Federal Circuit in *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008), that "[t]he reverse doctrine of equivalents is rarely applied, and this court has never affirmed a finding of non-infringement under the reverse doctrine of equivalents."

But this dictum is of no moment.  Indeed, the Federal Circuit noted a year after *Roche* that "the unusual nature of the reverse doctrine of equivalents is not itself a reason to sanction a party for invoking it.  The Supreme Court has recognized it to be a viable defense, even if it is rarely asserted."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009).

Steuben also argues that "Defendants' reverse doctrine of equivalents argument is simply another bite at the claim construction apple."  D.I. 724 at 8.  But application of the doctrine of equivalents (whether "forward" or "reverse") necessarily requires consideration of claim construction issues.  As the Federal Circuit held in *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir. 2007):

> A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method.  We have held that *the function, way, result inquiry focuses on "an examination of the claim and the explanation of it found in the written description of the patent."*

*Id.* at 1326 (emphasis added) (citations omitted).

8

Because there is a genuine issue of material fact about whether the reverse doctrine of equivalents precludes a finding of infringement, I will deny Steuben's motion for summary judgment.

NOW THEREFORE, at Wilmington on this Thirteenth day of October in 2021, Steuben's Motion for Summary Judgment No. 2 – Infringement of U.S. Patent No. 6,209,591 (D.I. 614) is DENIED.

_____
Chief Judge

9