# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEUBEN FOODS, INC.,

    Plaintiff,

    v.

SHIBUYA HOPPMANN CORP.,
SHIBUYA KOGYO CO., LTD., and
HP HOOD LLC,

    Defendants.

C.A. No. 1:19-cv-02181-CFC-CJB

## FINAL JURY INSTRUCTIONS

## TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ................................................................1

   1.1   INTRODUCTION ...............................................................1
   1.2   JUROR'S DUTIES ..............................................................1
   1.3   BURDENS OF PROOF .......................................................2
   1.4   CONSIDERATION OF EVIDENCE .....................................3
   1.5   EXHIBITS ..........................................................................4

2.  ISSUES PRESENTED ........................................................................4

3.  PATENT CLAIMS ..............................................................................5

   3.1   THE ROLE OF THE CLAIMS IN A PATENT ...................5
   3.2   INDEPENDENT AND DEPENDENT CLAIMS .................5
   3.3   CONSTRUCTION OF CLAIM TERMS .............................6
   3.4   CLAIM "ELEMENTS" OR "LIMITATIONS" .....................7

4. INFRINGEMENT .................................................................................7

   4.1   INFRINGEMENT OF THE '985 PATENT .........................9
   4.2   INFRINGEMENT OF THE '591 PATENT .......................10
   4.3   INFRINGEMENT OF THE '188 PATENT .......................10
   4.4 ISSUES THAT NEED NOT BE DETERMINED .................12

5.  INVALIDITY .....................................................................................12

   5.1   PERSON OF ORDINARY SKILL IN THE ART ..............13
   5.2   WRITTEN DESCRIPTION REQUIREMENT .................14
   5.3   ENABLEMENT REQUIREMENT ....................................16
   5.4   PRIOR ART .....................................................................18
   5.5   PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO 19
   5.6   OBVIOUSNESS ...............................................................21

6. DAMAGES ..........................................................................................24

   6.1   DAMAGES GENERALLY ...............................................24
   6.2   LUMP SUM V. RUNNING ROYALTY ..........................25
   6.3   REASONABLE ROYALTY AS A MEASURE OF DAMAGES ..............26
   6.4   FACTORS FOR DETERMINING A REASONABLE ROYALTY ..........27
   6.5   COMPARABLE LICENSE AGREEMENTS .....................30
   6.6   REASONABLE ROYALTY—APPORTIONMENT ............30

7.  DELIBERATIONS AND VERDICT ................................................31

   7.1   INTRODUCTION .............................................................31

7.2    UNANIMOUS VERDICT ........................................................................32
7.3    DUTY TO DELIBERATE ........................................................................33
7.4    SOCIAL MEDIA.....................................................................................34
7.5    COURT HAS NO OPINION....................................................................35

# 1.   GENERAL INSTRUCTIONS

## 1.1   INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I gave you some instructions at the beginning of the case. I will not repeat them now, but they still apply.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of the preliminary instructions and these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2   JUROR'S DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is

your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the claims and defenses presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3    BURDENS OF PROOF

For each issue in this case, either Plaintiff Steuben or Defendants Shibuya and Hood bear the burden of proof. The side who bears the burden of proof on an issue bears the burden of persuading you to find in their favor. As I said in the preliminary instructions, in a patent case there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

2

Steuben has the burden of proving by a preponderance of the evidence that Shibuya and Hood infringed the Asserted Claims of the Asserted Patents and the amount of damages that Steuben should receive to compensate it for any infringement. That means Steuben has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Steuben claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Steuben's claims would make the scales tip slightly on Steuben's side. If Steuben fails to meet this burden, there is no infringement.

The other burden of proof is "clear and convincing evidence." Shibuya and Hood have the burden of proving by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid. Clear and convincing evidence means that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

## 1.4   CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events and give it

3

whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.5    EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

## 2.    ISSUES PRESENTED

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

- Whether Steuben has proven by a preponderance of the evidence that Shibuya and Hood infringed one or more of the Asserted Claims;

- Whether Shibuya and Hood have proven by clear and convincing evidence that one or more of the Asserted Claims are invalid; and

- If any Asserted Claim has been infringed and is not invalid, whether Steuben has proven by a preponderance of the evidence the amount of damages, if any, that is adequate to compensate for infringement of that claim.

## 3.   PATENT CLAIMS

### 3.1   THE ROLE OF THE CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed. Neither the text preceding the claims, nor the figures in a patent can be infringed. Only the claims define the extent of the patent's coverage; therefore, what a patent covers depends, in turn, on what its claims cover. Each of the claims must be considered individually.

Both infringement and invalidity must be assessed on a claim-by-claim basis. There may be infringement as to one claim but no infringement as to another. Similarly, one claim may be invalid but another claim may not be.

### 3.2   INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent. The first way a patent claim can be stated is in the form of an "independent" claim. An "independent"

5

claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order for an accused machine to be covered by that claim, and thus infringe that claim. An independent claim is read alone to determine its scope.

The second way a claim can be stated is in the form of a "dependent" claim. A dependent claim refers to and incorporates the requirements of another claim and adds its own additional requirements. In this way, the claim "depends" on another claim. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim from which it depends. For example, claims 3 and 7 of the '985 patent are dependent claims because they incorporate the requirements of claim 1 and, as a result, claims 3 and 7 also include all the requirements of claim 1.

### 3.3    CONSTRUCTION OF CLAIM TERMS

It is my job as the judge to provide to you the meaning of any claim language that must be interpreted. It is not the job of any witness to provide you with the meaning of the claim language. I have already defined the meaning of some of the words of the Asserted Claims in this case. These definitions will be provided to you on your glossary of terms.

You must accept the definitions I give you and use them when you decide whether any claim has been infringed and whether any claim is valid. You must

use the same claim meaning for both your decision on infringement and your decision on validity.

Although I have only construed some of the claim terms, it is important to understand that a patent claim is infringed only if an accused machine includes each and every element in that patent claim. For any other claim term that I have not provided a definition, you should use its ordinary meaning within the context of the patent in which the claim term is used.

### 3.4   CLAIM "ELEMENTS" OR "LIMITATIONS"

In patent law, the requirements of a claim are often referred to as claim "elements" or "limitations." When a machine meets each and every requirement of a claim, the claim is said to "cover" that machine, and the machine is said to "fall within the scope" of that claim.

### 4. INFRINGEMENT

In general, there are two ways that a patent can be infringed: literally or under the doctrine of equivalents.

To determine literal infringement, you must compare each accused machine with each of the asserted claims. A patent claim can be literally infringed only if the accused machine meets each and every limitation in that patent claim.

Under the doctrine of equivalents, an accused machine that does not literally infringe a patent claim may nevertheless be found to infringe if a person having

ordinary skill in the field of the technology of the patent would have considered the differences between the accused machine and the patent claim to be insubstantial or would have found that the accused structure (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for a machine to infringe an asserted claim under the doctrine of equivalents, any element of the asserted claim which is not literally found in the accused machine must contain an equivalent in the accused machine. The question is not whether the accused machine as a whole is equivalent to the claimed invention as a whole.

You may not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

The doctrine of equivalents can also be used to negate a finding of infringement. This is sometimes called the "reverse doctrine of equivalents." Under this doctrine, an accused machine that literally infringes a patent claim nevertheless does not infringe if the accused machine is so far changed in principle

from the patented machine that it performs the same or a similar function in a substantially different way.

What constitutes equivalency must be determined in the context of the patent, the prior art, and the particular circumstances of the case. You should consider the purpose for which a given element is used in a patent, the qualities it has when combined with the other elements, and the function it is intended to perform.

A party can infringe a patent without knowing of the patent or without knowing that what it was doing is patent infringement. A party may also infringe a patent even though it believes in good faith that the patent is invalid. Thus, Shibuya's and Hood's knowledge of the asserted patents and Shibuya's and Hood's intent are irrelevant to your determination of infringement.

### 4.1   INFRINGEMENT OF THE '985 PATENT

Steuben alleges that Shibuya and Hood infringe claims 3 and 7 of the '985 patent under the doctrine of equivalents by using, selling, and importing into the United States the Accused P4, P6, and P7 Machines. The issue in dispute is whether the Accused Machines infringe the "wherein said atomized sterilant is intermittently added to said conduit" limitation under the doctrine of equivalents. In order to prove infringement of claims 3 and 7, then, Steuben must prove by a preponderance of the evidence that a person having ordinary skill in the field of the

technology of the patent would have considered the differences between the accused structure and the disputed limitation to be insubstantial or would have found that the accused structure (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the disputed limitation.

## 4.2   INFRINGEMENT OF THE '591 PATENT

In regard to the '591 patent, the Court has found that the accused P7 machine literally infringes claim 26 of the '591 patent. Shibuya and Hood contend that the P7 does not infringe claim 26 of the '591 under the reverse doctrine of equivalents. It remains Steuben's burden to prove infringement of claim 26 of the '591 patent by a preponderance of the evidence.

Under the reverse doctrine of equivalents, if an accused machine is so far changed in principle from a patented machine that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the machine does not infringe the claim.

## 4.3   INFRINGEMENT OF THE '188 PATENT

In regard to the '188 patent, Steuben alleges that Shibuya and Hood literally infringed claim 19 of the '188 patent by using, selling, and importing into the United States the Accused P4, P6, and P7 Machines. Also in regard to the '188 patent, Steuben alleges that Shibuya and Hood literally infringed claim 22 of the

'188 patent by using, selling, and importing into the United States the Accused P7 Machine.

The '188 patent includes terms that I have defined as "means-plus-function" terms. The parties do not dispute whether the claimed function is performed by the Accused Machines, so you need only focus on the accused structure. A machine meets a means-plus-function requirement of a claim if you find by a preponderance of the evidence that persons of ordinary skill in the art would find it includes a structure is either identical or "equivalent" to the structure which is set forth in the Court's claim-construction order.

If the machine has a structure that performs the specific function recited in the claim, but persons of ordinary skill in the art would find that the structure that performs the function is not identical or "equivalent" to the structure that I defined to you as performing the specific function, the machine does not infringe the asserted claim.

A structure in the Accused Machines may be found to be "equivalent" to one of the structure(s) I have defined as being described in the '188 patent if a person having ordinary skill in the field of technology of the '188 patent either would have considered the differences between them to be insubstantial at the time the '188 patent was filed or if that person would have found the structure

11

performed the function in substantially the same way to accomplish substantially the same result.

### 4.4 ISSUES THAT NEED NOT BE DETERMINED

I have determined as a matter of law that Shibuya and Hood have not willfully infringed any of the asserted claims, and so you need not consider that issue. Additionally, Steuben is no longer asserting claim 26 of the '188 patent, and so you need not determine infringement or invalidity of that claim. Finally, you may have heard argument about a doctrine called intervening rights. You need not determine that issue either.

## 5.   INVALIDITY

I will now instruct you on the rules you must follow in deciding whether Shibuya and Hood have proven that any of the Asserted Claims are invalid. Shibuya and Hood have the burden of proving by clear and convincing evidence that a patent claim is invalid. Clear and convincing evidence is evidence that produces a high probability that a fact is true. This is a higher standard than the "preponderance of the evidence" standard that is used for infringement.

Invalidity must be assessed on a claim-by-claim basis. In other words, you can find that one claim is invalid, but that other claims are valid, even in the same patent. Terms of the patent claims must be interpreted in the same way for both infringement and invalidity.

### 5.1    PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made. In this case, the parties' dispute what the level of ordinary skill in the art of aseptic packaging is, so you will have to determine what the appropriate level of skill in the art is.

Steuben argues that a person of ordinary skill would have a degree or equivalent experience in mechanical engineering with an ability to understand the microbiology and food science principles underlying aseptic packaging.

Shibuya and Hood argue that a person of ordinary skill would have had an undergraduate scientific or engineering degree in a relevant field (such as microbiology, packaging, process, or food engineer), at least five years of experience in an aseptic packaging and/or processing field (or a graduate degree conferring similar expertise), and an understanding of the relevant principles of microbiology and food science technology underlying aseptic packaging.

A person of ordinary skill in the art would be generally familiar with bottling and sterilization machines. A person of ordinary skill in the art could be understood to be a team, and in a multi-disciplinary field such as aseptic packaging, a person of ordinary skill in the art can be, and often is, a team of people. Each member of the

team contributes knowledge of their discipline to the person of ordinary skill in the art that comprises the team.

In deciding what the level of ordinary skill in the field of aseptic packaging is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

### 5.2   WRITTEN DESCRIPTION REQUIREMENT

A patent must contain a written description of the invention claimed in the patent. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, to show that the inventors actually possessed the claimed invention at the time of filing. However, the exact words found in the claim need not be used as long as the patent demonstrates that the inventor possessed the full scope of the claimed invention. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter.

Shibuya and Hood contend that claim 26 of the '591 patent and claims 19 and 22 of the '188 patent are invalid for failure to satisfy the written-description requirement. Shibuya and Hood bear the burden of establishing by clear and

14

convincing evidence that the patent specification fails to satisfy the written-description requirement for these claims.

When determining whether the specification meets the written description requirement, the claim must be viewed as a whole. The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would have recognized, from reading the patent specification, that the inventor possessed the full scope of the subject matter finally claimed in the patent as of the effective filing date of the patent (here, February 2, 1999), even though the claims may have been changed or new claims added since that time. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. A mere wish or plan for obtaining the claimed invention(s) is not adequate written description. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. the nature and scope of the patent claims;

2. the complexity, predictability, and maturity of the technology at issue;

3. the existing knowledge in the relevant field; and

4. the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims. If you find that Shibuya and Hood have proven by clear and convincing evidence that the '188 patent does not contain adequate written description for the invention recited in claims 19 and 22 of the '188 patent, then the claims are invalid. Similarly, if you find that Shibuya and Hood have proven by clear and convincing evidence that the '591 patent does not contain adequate written description for the invention recited in the claim 26 of the '591 patent, then the claims are invalid.

### 5.3   ENABLEMENT REQUIREMENT

Shibuya and Hood contend that claim 26 of the '591 patent and claims 19 and 22 of the '188 patent are invalid because the specifications of the '591 and '188 patents do not "enable" the full scope of the claimed inventions. To succeed, Shibuya and Hood must show by clear and convincing evidence that the patent specifications of the '591 and '188 patents do not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patents to make and use the full scope of the claimed inventions as of the effective filing date (here, February 2, 1999) without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some

amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of aseptic bottling;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of aseptic bottling;

(6) the level of ordinary skill in the field of aseptic bottling; and

(7) the nature and scope of the claimed invention.

Open-ended claims—that is, claims without an express upper or lower limit—may be enabled if there is an inherent, albeit not precisely known, upper limit and the specification enables one of skill in the art to approach that limit. Enablement of such claims depends on the particular facts of the invention, the disclosure, and the prior art.

No one of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors

and determine whether, in the context of this invention and the state of the art at the time of the effective filing date (here, February 2, 1999), a person having ordinary skill would have needed to experiment unduly to make and use the full scope of the claimed invention.

### 5.4   PRIOR ART

Another requirement under the patent laws is that the invention claimed in the patent must be new (i.e., not "anticipated") and not obvious in light of what came before. That which came before is referred to as the "prior art." Prior art includes items that were publicly known or used or offered for sale in the United States, as well as reference publications, such as published articles, patents, or patent applications, from anywhere in the world, that were made, known, used, published, or patented before the invention was made or more than one year before the effective filing date of the patent application. Prior art can also include United States patents that were filed before the invention was made even if they did not issue until after the invention was made.

Statements in the patent, or made by the applicant during prosecution of the patent, that identifies work of another as prior art is an admission that can be relied upon as prior art.

Shibuya and Hood rely on the following prior art to the Asserted Patents:

(1) Takei: Japanese Patent Application H2-268629 that was filed on October 5, 1990, and the published Japanese Translation of a PCT Application H4-154501 that was published on May 27, 1992.

(2) Foti: U.S. Patent No. 4,992,247 that issued on February 12, 1991.

(3) Nishimura or "Shibuya patent application": Japanese Unexamined Patent Application Publication H9-255095 that was published on September 30, 1997.

(4) Procomac: A presentation Luigi Baiocchi gave on April 28, 1997 in Fort Lauderdale, FL at the 44th Annual Conference of the International Society of Beverage Technologists entitled "Latest Innovations in Aseptic Filling."

(5) Bjerborn: PCT international publication No. WO9816259 that was filed on September 14, 1997 and published on April 23, 1998.

The parties agree that (1) Takei, Procomac, and Nishimura/Shibuya patent application are prior art to the '591 patent; and (2) Foti and Bjerborn are prior art to the '985 patent.

## 5.5   PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Shibuya and Hood must prove by clear and convincing evidence that the challenged Asserted Claims are invalid regardless of whether particular prior art references were considered by the United States Patent and Trademark Office (or "USPTO") during the prosecution of the application which matured into the

Asserted Patents. The invalidity burden of proof on Shibuya and Hood never changes regardless of whether the USPTO considered the reference.

If the USPTO did consider an anticipatory prior art reference or the same combination of references that are now asserted in an invalidity defense, it may be more difficult for Shibuya and Hood to meet its burden of proof. Deference is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners and administrative patent judges who are assumed to have some expertise in interpreting the prior art references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents and to only issue reexamination certificates for valid patent claims. When a patent challenger simply goes over the same ground travelled by the USPTO examiner, part of Shibuya's and Hood's burden is to show that the USPTO examiner was wrong in the decision to grant the patent or the reexamination certificate.

However, for those prior art references and obviousness combinations that Shibuya and Hood assert that were not considered by the USPTO during prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy the clear and convincing burden.

## 5.6    OBVIOUSNESS

Shibuya and Hood also contend that the Asserted Claims are invalid for obviousness based on certain combinations of prior art.

To prove that a patent claim is obvious, Shibuya and Hood must show, by clear and convincing evidence, that the inventions claimed would have been obvious to a person of ordinary skill in the art as of each claim's effective filing date. The issue is not whether the claimed invention would have been obvious to you as a layman, to me as the judge, or to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention would have been obvious, you should not consider what is known today or what was learned from the teachings of the Asserted Patents. Do not use hindsight; you must consider only what was known at the time of the invention. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of the date of invention.

In determining whether a claimed invention would have been obvious, you must consider:

1.    the scope and content of the prior art,

2.    the level of ordinary skill in the pertinent art; and

3.      the differences between the claimed invention and the prior art.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform this separate analysis for each of the claims. I will now explain each of these factors.

To determine the scope and content of the prior art, you must determine whether the prior art that Shibuya and Hood identified is reasonably pertinent to the particular problems the inventor(s) of the claimed invention faced. The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art. I have already instructed you on how you are to determine the level of ordinary skill in the art. Once you have made that determination, you are to apply it in your determination whether the asserted claims would have been obvious.

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention. Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known.

In considering whether a claimed invention  is obvious, you may, but are not required to, find obviousness if you find that at the time of the claimed invention, a reason existed that would have prompted a person of ordinary skill in the art in the

relevant field to combine the known elements in the same way the claimed invention does. The motivation to modify the prior art to arrive at the claimed invention need not be explicitly stated in the prior art to be combined nor be the same motivation that the inventor actually had.

In considering whether a claimed invention is obvious, you should consider whether, as of February 2, 1999, in regard to the '591 and '188 patents, and as of July 15, 1999, in regard to the '985 patent, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. In determining whether the claimed invention was obvious, consider each claim separately. The motivation to modify the prior art to arrive at

the claimed invention need not be explicitly stated in the prior art to be combined nor be the same motivation that the inventor actually had.

In determining obviousness, you must also consider whether the prior art, in view of the knowledge of persons of ordinary skill, would also have revealed that in so making or carrying out, persons of ordinary skill would have had a reasonable expectation of success. That is to say, would the prior art of record, in view of the knowledge of persons of ordinary skill, have provided persons of ordinary skill in the art with a reasonable expectation of making the claimed inventions without the benefit of the Asserted Patents and their disclosures.

## 6. DAMAGES

### 6.1   DAMAGES GENERALLY

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue.

Any damages you award must be adequate to compensate Steuben for any infringement you determine to have occurred. Damages are not meant to punish an infringer. If you find that any of the Asserted Claims is both valid and infringed, then Steuben is entitled to damages and you must determine the damages to which Steuben is entitled for Shibuya's and Hood's infringement.

Steuben has the burden to establish the amount of its damages by a preponderance of the evidence. While Steuben is not required to prove the

amount of its damages with mathematical precision, Steuben must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork. In other words, you should award only those damages that Steuben established that it more likely than not suffered. However, mere difficulty in ascertaining damages is not fatal to Steuben.

In this case, Steuben seeks a reasonable royalty. A reasonable royalty is defined as the money amount Steuben and Shibuya and Hood would have agreed upon as a fee for a license to the Asserted Patents at the time just prior to when infringement first began.

The end date of Steuben's potential damages period is the expiration date of each asserted patent. Damages may only be awarded for the period of time up to a patent's expiration date. Here, all three Asserted Patents are expired. The '591 patent expired on August 18, 2019; the '188 patent expired on November 27, 2019; and the '985 patent expired on July 15, 2019. The fact that the patents are expired has no bearing on any issue other than the time period for which damages may be calculated.

## 6.2   LUMP SUM V. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the

patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a per-bottle royalty based on the revenue from or the volume of sales of licensed products. A per-bottle royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

### 6.3    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of Steuben, on the one side, and Shibuya and Hood,

on the other side, would have been if they entered into an agreement at that time and if they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed, and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened before the time the infringement first began can be considered in evaluating the reasonable royalty. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

### 6.4   FACTORS FOR DETERMINING A REASONABLE ROYALTY

In determining the reasonable royalty, you may consider the following non-exclusive list of factors:

1.   The royalties, if any, received by Steuben for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2.   The nature and scope of the license, such as whether the license is exclusive or non-exclusive, or is restricted or nonrestricted in terms

of territory or with respect to whom the manufactured machine may be sold.

3. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

4. Whether Steuben had an established policy and marketing program to enforce its patent rights or license its patent under special conditions to preserve its monopoly.

5. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, the business risks, or significant features or improvements added by Shibuya or Hood.

6. The commercial relationship between Steuben, on the one hand, and Shibuya and Hood, on the other hand, such as whether they are competitors in the same line of business, or whether they are inventor and promoter.

7. The duration of the Asserted Patents and the term of the hypothetical license.

8. The established profitability of the product or machine made under the patents, its commercial success, and its current popularity.

9.     The nature of the patented invention; the character of any commercial embodiment of it as owned and produced by Steuben, and the benefits to those who have used the invention.

10.    The extent to which Shibuya and Hood have made use of the invention and any evidence probative of the value of that use.

11.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

12.    The opinion testimony of qualified experts.

13.    The existence of any licenses that are technically and economically comparable to the license to be negotiated at the hypothetical negotiation.

14.    The amount that a licensor (such as Steuben) and a licensee (such as Shibuya and Hood) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able

to make a reasonable profit and which amount would have been
acceptable by a patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence
that has been presented to you in this case on each of these factors. You may also
consider any other factors which in your mind would have increased or decreased
the royalty Shibuya and Hood would have been willing to pay and Steuben would
have been willing to accept, acting as normally prudent business people. The final
factor establishes the framework which you should use in determining a
reasonable royalty.

### 6.5    COMPARABLE LICENSE AGREEMENTS

Comparable license agreements are one factor that may inform your
decision as to the proper amount and form of the reasonable royalty award, similar
to the way in which the value of a house is determined relative to comparable
houses sold in the same neighborhood. Whether a license agreement is comparable
to the license under the hypothetical license scenario depends on many factors,
such as whether they involve comparable technologies, comparable economic
circumstances, comparable structure, and comparable scope. If there are
differences between a license agreement and the hypothetical license, you must
take those into account when you make your reasonable royalty determination.

### 6.6    REASONABLE ROYALTY—APPORTIONMENT

The reasonable royalty award must be based on the value attributable to the patented invention, as distinct from unpatented features of the Accused Machines or other factors such as marketing or advertising. A royalty compensating Steuben must reflect the value attributable to the infringing features of the product. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the Accused Machines have both patented and unpatented features, apportionment is required unless the patented feature is the sole driver of consumer demand or substantially creates the value of the component parts. It is not enough for Steuben to show that the patented feature is viewed as valuable, important, or even essential to the use of the Accused Machines.

## 7.   DELIBERATIONS AND VERDICT

### 7.1   INTRODUCTION

That concludes the part of my instructions on the law. I will end by explaining some things about how you will conduct your deliberations in the jury room and about your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as

soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

## 7.2   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinions, if convinced they are erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take the form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. Determining what the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to

change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4    SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cellphone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook, LinkedIn, Snapchat, YouTube, Twitter, TikTok, or Instagram to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5    COURT HAS NO OPINION

Let me finish by repeating something I have said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.